**Fritz W. HINTZE; Ledagole R. Hintze, Plaintiffs–Appellants,**

**v.**

**INTERNAL REVENUE SERVICE; Jeffrey Breault, Special Agent; United States of America, Defendants–Appellees (Two Cases).**

Nos. 88–1320, 88–1347.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 8, 1989.

Decided July 13, 1989.
Rehearing and Rehearing In Banc Denied Aug. 18, 1989.

William Allen Cohan (Cohan & Greene, on brief), for plaintiffs-appellants.

William Anthony Whitledge (Gary R. Allen, Charles E. Brookhart, Tax Div., Dept. of Justice, Washington, D.C., William S. Rose, Jr., Asst. Atty. Gen., Henry E. Hudson, Alexandria, Va., Breckinridge L. Willcox, U.S. Attys., Washington, D.C., on brief) for defendants-appellees.

Before PHILLIPS and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.

PHILLIPS, Circuit Judge:

In this consolidated appeal, Frederick W. and Ledagole R. Hintze challenge two district court orders summarily enforcing a number of Internal Revenue Service summonses issued to obtain certain records held by third parties and allegedly sought for the purpose of determining the appellants' tax liability for calendar years 1984 through 1986.

In No. 88–1320, we find that developments subsequent to the entry of the district court's enforcement order render the appeal moot. We therefore dismiss for want of a live case or controversy. In No. 88–1347, finding no error in the district court's determination that the appellants failed to rebut the IRS's prima facie case for summary enforcement of the challenged summonses, we affirm.

I

In November of 1978, the Hintzes filed an IRS Form 843, seeking a refund of $31,093.04 in taxes paid for calendar year 1975. They claimed that "the income tax violates the U.S. Constitution," and that "according to federal law ..., [we] have earned no lawful money and owe no tax-

es."[1] The IRS denied the claim and subsequently classified the appellants as "tax protestors."

The Hintzes apparently paid their taxes until 1983. They failed to file returns, however, for tax years 1984, 1985 and 1986. On the basis of various Form 1099 and W–2 reports, officials at the IRS Philadelphia Service Center determined that the Hintzes realized income in those years and should have filed returns. The Service Center therefore transferred the case to the Baltimore regional IRS office for further action.

Revenue Officer Penelope Lawson subsequently conducted a "Taxpayer Delinquent Investigation" and verified that the Hintzes had not filed tax returns since 1983. She examined various public real and personal property registers and a number of employer wage reports—all of which suggested that the appellants owned substantial property and had realized a significant amount of unreported income—and ultimately decided to refer the Hintze file to the IRS Criminal Investigation Division (CID). CID Special Agent Jeffrey Breault then conducted a formal inquiry, for the immediate purpose of determining the appellants' "correct tax liabilities" and whether they had "violated any of the criminal provisions of the Internal Revenue Code."[2]

In connection with this inquiry, Agent Breault attempted to obtain various records held by financial institutions in Maryland and Virginia. Exercising his authority under § 7602(a) of the Internal Revenue Code, 26 U.S.C. § 7602(a), Breault ultimately issued several administrative summonses requiring these institutions to produce any and all records of activity in the Hintzes' various deposit and loan accounts during calendar years 1983 through 1987. Pursuant to § 7609(b)(2) of the Code, id. § 7609(b)(2), the appellants then filed essentially identical petitions to quash the summonses in the federal district courts for the Eastern District of Virginia and the District of Maryland.[3]

In support of their petitions, the Hintzes claimed that the IRS had "abusively" issued the challenged summonses "solely for purposes of a criminal investigation," and in anticipation of an ultimate referral of the case to the Department of Justice.[4] They also alleged, *inter alia*, that the CID was pursuing its investigation of the case in furtherance of a general IRS policy of "selectively prosecuting" tax protestors; and that enforcement of the summonses would "violat[e the petitioners'] rights [under the] free association, free speech and petition for redress clauses of the First Amendment."[5]

Finally, petitioners claimed that the IRS had issued the challenged summonses "in bad faith [and] in violation of the Fourth Amendment"—that is, on the basis of information obtained as "by-product[s] of 'fruits of the poisonous tree' of illegal searches and seizures."[6] On April 5, 1985, IRS agents conducted searches of several local offices of the National Commodities and Barter Exchange (NCBA)—a tax protestors organization to which the Hintzes belonged. The agents seized a number of documents, including the NCBA's member-

1. *See* Joint Appendix Vol. II at 18.

2. *See* Declaration of Jeffrey Breault, J.A. Vol. II at 19.

3. In the Eastern District of Virginia, the Hintzes sought an order quashing Agent Breault's summons of certain records held by the Crestar Bank of Richmond, Virginia. The petition filed in the District of Maryland challenged separate summonses of records held by five different financial institutions: the Prince Georges Realtors Federal Credit Union; John Hanson Savings & Loan, Inc.; the Perpetual American Bank; the Loyola Federal Savings & Loan Association; and Chevy Chase Savings & Loan, Inc. The Internal Revenue Code vests jurisdiction over proceedings to quash administrative summonses in the federal district court for the district "within which the ... summoned [third-party recordkeeper] resides or is found." 26 U.S.C. § 7609(h)(1). District court orders denying petitions to quash are "final orders," *id.*, hence appealable under 28 U.S.C. § 1291.

4. *See* Petition to Quash Summons (Eastern District of Virginia), J.A. Vol. I at 2; Second Amended Petition to Quash Summons (District of Maryland), J.A. Vol. I at 75.

5. *Id.*

6. *Id.*

ship lists. In ensuing litigation, however, the Court of Appeals for the Tenth Circuit affirmed a district court determination that the search warrants authorizing the IRS's NCBA "raids" failed to contain a "constitutionally adequate particularization of the items to be seized," rendering the searches themselves illegal. *Voss v. Bergsgaard*, 774 F.2d 402, 405 (10th Cir.1985). The Hintzes now allege that Agent Breault issued the summonses challenged here on the basis of information illegally obtained in the April 1985 searches—and not, as the IRS claims, in connection with the Philadelphia Service Center's independent identification of a possible case of tax evasion.

In support of all of these claims, the Hintzes submitted but one item of evidence: a declaration executed by their attorney, William A. Cohan, who claimed to have "personal knowledge of the unlawful activities of IRS agents and their informants." J.A. Vol. II at 4. Cohan claimed to have "reliable" evidence of "illegal searches and seizures, abusive uses of IRS summonses, grand jury subpoenas, and search warrants, perjury by IRS agents ... [and] deliberately falsified accusations by IRS personnel that NCBA members were ... plotting to murder a federal judge and/or injure IRS agents ..., stockpiling weapons ..., [and] plotting the violent overthrow of state and/or federal governments." *Id.*

In response to the Hintzes' petitions to quash, the IRS filed motions in both district courts for summary enforcement of the summonses. The government also submitted sworn affidavits executed by Revenue Officer Lawson, Special Agent Breault and John P. Funyak, Sr., Chief of the Criminal Investigation Division at the Philadelphia Service Center, each of which described both in general and specific terms the circumstances surrounding the IRS's initiation of the Hintze investigation and Agent Breault's issuance of the challenged summonses. On the basis of these affidavits, the district courts separately concluded that the government had established a prima facie case for summary enforcement of the summonses, and that petitioners had failed to show in response that the IRS

sought enforcement for "improper purposes" or in an attempt to "abuse process." Both courts ultimately entered orders granting the government's motions for summary enforcement and denying the Hintzes' later motions for stays pending appeal.

In No. 88–1320, petitioners appeal the enforcement order issued by the district court for the Eastern District of Virginia. In No. 88–1347, they challenge the similar order issued by the district court for the District of Maryland. On September 9, 1988, we denied the Hintzes' Rule 8 motion for a stay pending appeal in No. 88–1320. Sometime thereafter, the summoned party complied with the district court's enforcement order and produced all records described in the original summons. We have not been advised whether the summoned parties in No. 88–1347 have complied with the district court's enforcement order, and we therefore must assume they have not.

## II

■ We turn first to the government's threshold contention that the Crestar Bank's compliance with the summons challenged in No. 88–1320 renders the Hintzes' appeal in that case moot.

In *Kurshan v. Riley*, 484 F.2d 952 (4th Cir.1973), we held that compliance with an IRS summons mooted the appeal of a district court order denying a taxpayer's motion to enjoin the government from enforcing the summons. The present case is arguably distinguishable; but we think there is no meaningful difference between a case where, as here, the appellant challenges an affirmative enforcement order, and one in which the appeal is from a district court's denial of injunctive relief. In either setting, the dispositive principle is that "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). Applying the rule here, we find that the bank's compliance with the challenged enforcement order precludes our exercise of

jurisdiction over the Hintzes' appeal. "[O]nce an individual complies with a summons enforcement order and produces the documents, a successful challenge to the enforcement order could afford no relief; the information has already been provided and thus this court would be powerless to provide relief that would affect the rights of the litigants." *United States v. Barrett*, 837 F.2d 1341, 1346 (5th Cir.1988) (en banc).[7] The possibility that information improperly obtained as a result of the summoned party's compliance might be used in subsequent civil or criminal trials is of no consequence, *United States v. First American Bank*, 649 F.2d 288, 289 (5th Cir. 1981), since aggrieved parties "may adequately protect their asserted interests by seeking to suppress such information" in the normal course of later proceedings. *Kurshan*, 484 F.2d at 953.

We therefore hold that the summoned party's compliance with the enforcement order challenged in No. 88–1320 renders the petitioner's appeal of that order moot. In turn, we dismiss the appeal and remand the case to the United States District Court for the Eastern District of Virginia with directions that it vacate its enforcement order and dismiss the petition to quash without prejudice to the appellants' right to seek appropriate relief in subsequent proceedings. *See United States v. Kis*, 658 F.2d 526, 535 (7th Cir.1981); *Kurshan*, 484 F.2d at 953.

### III

What remains is to decide whether the district court erred by granting the IRS's motion for summary enforcement of the summonses challenged in No. 88–1347. As indicated, the Hintzes claim that the CID sought their financial records for "improp-er purposes," and that they were therefore entitled to an order quashing the summonses. In the alternative, they seek a limited remand, arguing that the district court should have permitted discovery and scheduled an evidentiary hearing on the underlying petition to quash.

■ Because it turned on a resolution of the fact-specific question of whether the IRS issued the challenged summonses for legitimate purposes, we review the district court's denial of the Hintzes' petition to quash and its subsequent issuance of a summary enforcement order under the clearly erroneous standard. *See Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir.1988); *Ponsford v. United States*, 771 F.2d 1305, 1307 (9th Cir.1985). Similarly, we review the district court's decision to deny an evidentiary hearing under the comparably deferential, "abuse of discretion" standard. *United States v. Author Services, Inc.*, 804 F.2d 1520, 1523 (9th Cir.1986),

### A

Section 7602 of the Internal Revenue Code gives the IRS authority to issue administrative summonses to taxpayers and third-party recordkeepers "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax ..., or collecting any such liability." 26 U.S.C. § 7602(a). This provision "endow[s] the IRS with 'expansive information gathering authority,'" *United States v. White*, 853 F.2d 107, 110 (2d Cir.1988) (quoting *United States v. Arthur Young & Co.*, 465 U.S. 805, 816, 104 S.Ct. 1495, 1502, 79 L.Ed.2d 826 (1984)), *cert. granted*, — U.S. —, 109 S.Ct. 1309, 103 L.Ed.2d 578 (1989), and

---

7. With but one exception, the circuit courts that have considered the question have held that compliance with district court orders summarily enforcing IRS summonses moots any subsequent challenge to the validity of the summonses themselves. *See, e.g., United States v. Orlowski*, 808 F.2d 1283, 1287 (8th Cir.1986); *United States v. Kis*, 658 F.2d 526, 532–33 (7th Cir. 1981); *United States v. Patmon*, 630 F.2d 458, 459 (6th Cir.1980); *United States v. Arthur Andersen & Co.*, 623 F.2d 720, 722 (1st Cir.1980);

*United States v. Deak–Perera Intern. Banking Corp.*, 610 F.2d 89, 89 (2d Cir.1979); *but see Gluck v. United States*, 771 F.2d 750, 754 (3d Cir.1985) ("[T]he surrendering of the documents to the IRS does not end the controversy between the parties because, if we find that the summonses were illegal, we can still fashion a remedy—prohibition of the use of the summoned documents—to afford the [appellants] effective relief.").

the courts have therefore granted motions for summary enforcement of administrative summonses in all but the most exceptional circumstances. Because the summons power clearly is "necessary for the [IRS's] effective performance of congressionally imposed responsibilities to enforce the tax Code," *United States v. Euge*, 444 U.S. 707, 711, 100 S.Ct. 874, 878, 63 L.Ed.2d 141 (1980), district courts should grant petitions to quash only upon a strong evidentiary showing of administrative abuse.

There are still some limits on the government's power under § 7602, however, and the IRS obviously "must use its summons authority in good faith." *United States v. LaSalle National Bank*, 437 U.S. 298, 313, 98 S.Ct. 2357, 2366, 57 L.Ed.2d 221 (1978). Thus, when the IRS seeks judicial enforcement of a summons, it

> must [first] show [1] that the [underlying] investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the Commissioner's possession, and [4] that the administrative steps required by the Code have been followed—in particular, that the "Secretary [of the Treasury] or his delegate," after investigation, has determined the . . . examination [of records] to be necessary and has notified the taxpayer in writing to that effect.

*United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964). The investigated taxpayer may then "challenge the summons on any appropriate ground." *Id.* at 58, 85 S.Ct. at 255 (quoting *Reisman v. Caplin*, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964)). When the government invokes the summons power and seeks enforcement, "a court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Id.* Thus, when confronted with a petition to quash summonses purportedly issued in the normal course

of a civil delinquency investigation, the district court must undertake some preliminary inquiry into the "underlying reasons for the examination." *Id.*

In *Alphin v. United States*, 809 F.2d 236 (4th Cir.1987), we discussed generally the standards which govern analysis of whether the government has satisfied its obligations under *Powell* and, in more specific terms, the procedures which district courts should follow in summons enforcement proceedings. In order to establish a prima facie case for the enforcement of a civil summons issued pursuant to § 7602(a), the IRS need only present "an affidavit of an agent involved in the investigation averring the *Powell* good faith elements." *Id.* at 238. At this stage, the government's burden

> is fairly slight[,] because this is a summary proceeding. It occurs only at the investigative stage of an action against the taxpayer, and "the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted."

*Id.* (quoting *Kis*, 658 F.2d at 536). Then, if the government succeeds in establishing a prima facie case for enforcement, the party challenging the summons assumes "the heavy burden of disproving the actual existence of a valid civil tax determination or collection purpose." *Id.; see also LaSalle*, 437 U.S. at 316, 98 S.Ct. at 2367.

■ As indicated, whether to conduct an evidentiary hearing in the course of summons enforcement proceedings is a matter committed to the sound discretion of the district court. There is no requirement that the court conduct such a hearing or permit discovery in each and every case. *See, e.g., United States v. Harris*, 628 F.2d 875, 879 (5th Cir.1980) ("A taxpayer's right to an adversary hearing on the good faith issue is not absolute."); *United States v. Southern Tanks, Inc.*, 619 F.2d 54, 56 (10th Cir.1980) ("As a general rule, discovery is available in summons enforcement proceedings only in extraordinary situations."). Instead, once the government has carried its initial burden to establish a prima facie case for enforcement, a party

challenging IRS summonses will be entitled to an adversary hearing only upon the production of some substantive evidence corroborating the claim of abuse.

In order to be entitled to a hearing, the party challenging the summons must allege specific facts in its responsive pleadings, supported by affidavits, from which the court can infer a possibility of some wrongful conduct by the IRS.... "Mere allegations of bad faith will not suffice." *Kis,* 658 F.2d at 539 .... *If the challenging party cannot refute the government's prima facie case or cannot factually support a proper affirmative defense,* "the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing." [*United States v.*] *Garden State National Bank,* 607 F.2d [61,] 71 [(3d Cir. 1979)]. Similarly, the court should not allow discovery at this stage unless the taxpayer makes a preliminary demonstration of abuse.

*Alphin,* 809 F.2d at 238 (emphasis supplied). Of course, the dispositive, underlying question in each case is "whether the [government] is pursuing [enforcement] in good faith." *LaSalle,* 437 U.S. at 319 n. 19, 98 S.Ct. at 2368 n. 19.

### B

■ Applying these standards here, we find that the IRS established a prima facie case for enforcement of the challenged summonses. Agent Breault's affidavit stated: (1) that the CID was pursuing its investigation of the Hintzes both to determine their "correct tax liabilities" and to ascertain whether they had "violated any of the criminal provisions of the Internal Revenue Code"; (2) that the summoned financial institutions were "believed to be in possession of books, records, papers, and other data relating to the financial transac-

tions of Fritz Hintze, all of which relate to the investigation"; (3) that the records described in the summonses were "not already in the possession of the Internal Revenue Service"; and (4) that he had taken "[a]ll administrative steps required by the Internal Revenue Code ... for issuance of ... the summonses at issue in this matter." J.A. Vol. II at 19–21. Suffice it to say that this affidavit explicitly "averr[ed] the *Powell* good faith elements," and that by introducing it the IRS carried its threshold burden under *Alphin.* 809 F.2d at 238. We therefore turn to the remaining (and dispositive) question in this case: *viz.,* whether the petitioners responded to the government's prima facie case with sufficient evidence of "administrative abuse" that the district court should have either quashed the summonses outright or (at the very least) permitted limited discovery and an adversarial evidentiary hearing.

■ Without deciding the question, we may assume for the sake of argument that, *if proven,* some or all of the Hintzes' claims of "abuse" might well have led the district court to deny the government's motion for summary enforcement. For example, if the petitioners had been able to show that the IRS initiated its delinquency investigation in this case solely on the basis of information obtained as a result of the illegal April 1985 search of the NCBA's offices, they might have been entitled to an order quashing the challenged summonses. *See United States v. Beacon Federal Savings and Loan,* 718 F.2d 49, 54 (2d Cir. 1983). The taxpayers here might well have prevailed, moreover, had they succeeded in showing that the IRS was pursuing its investigation for the sole purpose of building a case on anticipated criminal charges. *See LaSalle,* 437 U.S. at 313–17, 98 S.Ct. at 2365–68.[8]

---

8. Under the "sole criminal purpose" doctrine, which the courts developed as a judicial gloss on the original language of § 7602, interested parties may obtain an order quashing administrative summonses upon any showing that the IRS is pursuing the underlying investigation for the sole purpose of collecting evidence for use in a criminal prosecution. *See United States v. Theodore,* 479 F.2d 749, 753 (4th Cir.1973). In

concrete terms, the rule is that the government may not seek enforcement of summonses issued after the IRS has referred a case to the Department of Justice for prosecution. *LaSalle,* 437 U.S. at 311, 98 S.Ct. at 2365. More importantly, the rule also requires that the courts refuse to enforce summonses once the IRS has "institutionally committed" itself to such a referral. *Id.* at 316–17, 98 S.Ct. at 2367–68 (IRS may not

The difficulty here, however, is that the Hintzes adduced no competent evidence whatsoever in support of their various claims of abuse. Once the government has established a prima facie case, the party challenging the summons must come forward with *some* evidence that enforcement would be improper. We have before recognized that affidavits supporting responsive claims of abuse may be sufficient to trigger the need for further investigation. *Alphin*, 809 F.2d at 238. "Allegations supporting a 'bad faith' defense are ... insufficient if conclusionary," however, and "*[t]he affidavit must particularize those specific facts from which an inference may be drawn that the conduct of the Service was [improper]*." *Garden State*, 607 F.2d at 71 (emphasis supplied). *See also United States v. Equitable Trust Co.*, 611 F.2d 492, 499–501 (4th Cir.1979) (further investigation and evidentiary hearing required when party contesting enforcement states with sufficient particularity facts supporting inference of bad faith).

In support of their various claims, the Hintzes introduced only the affidavit of their attorney, William A. Cohan, who alleged (apparently on the basis of "information and belief") that the IRS had "singled out" the petitioners for "selective criminal prosecution" in furtherance of a general scheme of retaliation against "tax protestors" in general and NCBA members in particular. Examining *seriatim* the specific allegations of the underlying petition to quash, however, we think it clear that this affidavit fails to "particularize" in any meaningful way facts supporting an inference of abuse—or for that matter to provide *any* evidentiary support for the separate claims of "abuse."

Petitioners first claimed that the IRS had issued the challenged summonses "solely for purposes of a criminal investigation," and that the CID had made a "de facto" referral of the case to the Department of Justice. The district court would have been compelled to investigate this claim and permit an adversarial hearing, however, only if the evidence had revealed: "(1) that the IRS issued [the] summonses after the investigating agents recommended prosecution, (2) that inordinate and unexplained delays in the investigation transpired, or (3) that the investigating agents were in contact with the Department of Justice." *United States v. Genser*, 595 F.2d 146, 152 (3d Cir.1979). The Cohan affidavit simply did not aver—indeed the initial petition to quash did not even allege—that any of these events had in fact transpired; and the district court was therefore obliged to "accept[ ] as admitted" the IRS's claim that it was pursuing the Hintze investigation for legitimate "civil" purposes. *Garden State*, 607 F.2d at 71.

The record likewise fails to support the petitioners' separate claims that the IRS issued the challenged summonses either in furtherance of an improper, selective criminal investigation of tax protestors in general and the NCBA's members in particular, or on the basis of information seized in the illegal April 1985 searches of the NCBA's offices. The petition to quash and the Cohan affidavit simply allege no facts which might support an inference that the Hintzes were somehow implicated in an ongoing investigation of the NCBA, or indeed that there was any connection whatso-

---

delay referral for purpose of gathering additional evidence for anticipated prosecution, since "[s]uch a delay would be tantamount to the use of the summons authority after the recommendation and would permit the Government to expand its criminal discovery rights").

In 1982, Congress amended § 7602 to make explicit the *LaSalle* rule that the IRS may not issue an administrative summons once it has recommended prosecution to the Department of Justice. Pub.L. 97–248, Title III, § 333(a), 96 Stat. 622 (1982) (codified as 26 U.S.C. § 7602(c)). In the present case, the government argues that the 1982 amendments "legislatively overruled the 'sole criminal purpose' doctrine, and authorize[ ] the issuance of a summons to conduct a solely criminal investigation until such time as there is a referral." Appellee's Br. at 13. The Supreme Court has recently held, however, that amended § 7602 "codifie[s] the essence of [the] holding" in *LaSalle*, and that the IRS still may not "circumvent" the (now codified) prohibition against post-referral use of the summons power "by delaying ... a recommendation [for prosecution] in order to gather additional information." *United States v. Stuart*, — U.S. —, —, 109 S.Ct. 1183, 1189, 103 L.Ed.2d 388 (1989).

ever between the April 1985 "raids" and the CID inquiry in this case. Conclusory allegations of an "institutional plan to prosecute" are obviously insufficient; petitioners must show (or at least allege) a direct connection between specifically identified and clearly improper administrative activity and the issuance of the challenged summonses. *United States v. First Nat'l Bank of Mitchell*, 691 F.2d 386, 388 (8th Cir.1982). *See also Beacon*, 718 F.2d at 55 (where petitioners allege that IRS issued summonses on basis of information obtained in violation of fourth amendment, but support that allegation "only by the hearsay affidavit of an attorney," district court is "justified in rejecting taxpayers' claim summarily"). In any event, we think the district court here was entitled to rely on the abundant evidence in this record that the IRS initiated the Hintze investigation on the basis of the Philadelphia Service Center's independent determination that the petitioners had simply failed to file returns or pay their taxes. The mere claim that a taxpayer "is being investigated because she is a tax protestor does not prove bad faith." *United States v. Feminist Federal Credit Union*, 635 F.2d 529, 530 (6th Cir.1980). In the end, the pleadings and affidavits here do little more than repeat—again and again—precisely such a claim, and we therefore cannot characterize as "clear error" the district court's conclusion that the petitioners had failed to substantiate their claims of "bad faith."

Finally, petitioners also claimed that enforcement of the summonses would "violat[e] their rights to free association [and] free speech" under the first amendment. Nowhere in the papers filed in the district court, however, did the Hintzes explain precisely *how* the entry of an order granting the IRS access to the financial records described in the summonses would interfere with these rights.

So far as petitioners' argument on this point reveals, the underlying claim is that enforcement of the summonses would somehow undermine their right to participate in NCBA activities. We of course do not question that the NCBA's "advocation of modifying or abolishing our country's tax system is a legitimate activity ... protected by the first amendment." *Voss*, 774 F.2d at 406. Nor do we have any doubt about the Hintzes' right to participate in such activities as members of the organization. Where there is "no evidence that enforcement [of the challenged summonses] would burden [petitioners'] right to associate with other members, or that enforcement would have other specific adverse effects on protected rights," however, a district court has no choice but to deny the contested petition to quash. *Mitchell*, 691 F.2d at 388.[9]

The Hintzes claim that there was in this record a "plethora of evidence of wrongful conduct by the IRS." Appellants' Br. at 25. To the contrary, we find in the bare submission of the Cohan affidavit little if any evidentiary support for the petitioners' various claims of abuse. We simply cannot say, therefore, that the district court abused its discretion by denying the request for discovery or an evidentiary hearing and disposing of this case on the pleadings—much less that it committed "clear error" by granting the government's motion for summary enforcement.

## IV

For the reasons expressed in Part II above, we dismiss the appeal in No. 88–1320 and remand the case to the District Court for the Eastern District of Virginia with instructions that it vacate its enforcement order and dismiss the petition to quash without prejudice. For the separate reasons expressed in Part III, we affirm the district court's order in No. 88–1347

---

**9.** On appeal, petitioners have also claimed that the district court should not have granted the government's motion for summary enforcement because the IRS already had in its possession the information described in the challenged summonses. Because our review of the record reveals that this claim was not presented to the district court, however, and because we are not persuaded that "our refusal to consider it would result in a miscarriage of justice," we decline to express any opinion on its merits. *National Wildlife Fed'n v. Hanson*, 859 F.2d 313, 318 (4th Cir.1988).

**130**

summarily enforcing the challenged summonses.

SO ORDERED.