UNITED STATES of America, et al.

v.

**Francis STREETT, Jr.**

**Civ. No. JFM–91–2184.**

United States District Court,
D. Maryland.

Jan. 14, 1992.

David I. Salem, Office of U.S. Atty., Baltimore, Md., for U.S.

Francis E. Streett, Jr., pro se.

## MEMORANDUM

MOTZ, District Judge.

The United States of America and Lewis L. Kubiet, a revenue officer with the Internal Revenue Service, (referred to collectively as "the government"), have filed a petition pursuant to §§ 7402 and 7604 of the Internal Revenue Code (the "Code") for enforcement of an IRS summons issued to Francis E. Streett, Jr. of Parkton, Maryland. Streett has moved to quash the summons. The government's petition for enforcement will be granted and Streett's motion to quash will be denied.

### I.

On February 27, 1991, Kubiet personally served Streett with an IRS administrative summons issued pursuant to § 7602 of the Code. The summons ordered Streett to appear at IRS offices in Baltimore on March 15, 1991 and produce all records in his control that reflect income he received for the years 1980 through 1989. IRS records indicate that Streett has not filed an income tax return for those years.

The summons is a Collection Summons, Form 6638 (Rev. 4–89). Form 6638 is a three-part form, each part consisting of a single page: the original summons (Part 1), an identical copy for service (Part 2) and a notice sheet for third-party recipients (Part 3). The form provides space for entering the name and address of the person summoned, the tax years for which information is sought and the time and place for appearance. At the foot of the form appears the language "Issued under the authority of the Internal Revenue Code" followed by a space for the date, under which are signature lines for the issuing officer and if applicable, the approving officer. Information entered on the face of Part 1 is transferred to Part 2 by means of carbon paper. Printed on the reverse of Part 1 is a Certificate of Service of Summons; the reverse of Part 2 contains relevant provisions of the Code for the taxpayer's reference. All three parts are joined at the top by an adhesive band.

Consistent with the instructions to Form 6638, Kubiet served Streett with Part 2, bearing an accurate carbon copy of the information entered on Part 1, including Kubiet's signature. Kubiet then completed the Certificate of Service of Summons located on the reverse of Part 1. He checked the box indicating that he had "handed an attested copy of the summons to the person to whom it was directed," under which he wrote Streett's full name and address. Kubiet also entered the date and time of service and signed the certificate.

Streett contacted the IRS before the date scheduled for his appearance. By letter dated March 11, 1991, he advised Kubiet that he would not meet with any IRS official unless Kubiet or the IRS first answered a host of legal and administrative questions and provided certain information, including Kubiet's home address and telephone number. The letter was studded with various administrative, statutory and case-law citations which, in Street's opinion, cast doubt on the legality of the summons. Street closed by stating that the letter was intended as a challenge to Kubiet's authority. On April 1, 1991, district counsel for the IRS wrote to Streett and offered him a second opportunity to appear on April 15th. The letter did not provide the information requested by Streett. Streett did not appear.

On August 2, 1991, the government filed this petition for enforcement of the February 27th summons. A show-cause hearing was scheduled for September 12th. Shortly before the hearing, Streett filed his motion to quash the summons, contending

that: (1) the copy of the summons that Kubiet served on him was not an "attested copy" within the meaning of § 7603 of the Code; (2) the regulations implementing the relevant provisions of the Code do not apply to him since he has not engaged in activities dealing with alcohol, tobacco or firearms; and (3) the IRS failed to notify him, as required by Treasury Order No. 24 (1986), that he was under an obligation to keep income records. Because the government had not had an opportunity to file a memorandum in opposition to Streett's motion, I set a briefing schedule at the hearing. The parties have now filed supplemental memoranda, and the case is ripe for decision.[1]

## II.

Section 7602 of the Code authorizes the IRS to issue an administrative summons "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax ..., or collecting any such liability." Section 7604 provides for enforcement of the summons by the district court for the district in which the taxpayer resides. In order to obtain judicial enforcement under § 7604, the government must show:

> that the investigations will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to that purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps

---

1. I anticipated that in the event that Streett's motion to quash was denied on the grounds that he has therefore asserted, he might invoke his Fifth Amendment privilege against self-incrimination with respect to the documents and the information called for by the summons. Therefore, I inquired of him at the hearing if he would, in fact, follow that course. He indicated that he would do so. Accordingly, I also requested the government to state in its supplemental memorandum its position concerning the Fifth Amendment issue. As to the tax years 1980 through 1984, the government contends that the statute of limitations for criminal prosecution has expired. This contention appears meritorious. In any event, assuming that (because of any tolling which has occurred) limita-

tions have not expired, it appears that the Fifth Amendment issue has been mooted by the government's willingness (as expressed in its supplemental memorandum) to immunize Streett in connection with any documents and other information which he is compelled to provide. *See United States v. Sharp,* 920 F.2d 1167, 1170–71 (4th Cir.1990). Although the government has specifically stated only that it would "take appropriate formal steps ... to ensure that Mr. Streett will not be prosecuted criminally with respect to taxpayer information requested from 1985–89," presumably it has no substantive objection against taking such steps with respect to years as to which it contends that limitations have expired.

required by the Code have been followed—in particular, that the "Secretary or his delegate," after investigation has determined the further examination to be necessary and has notified the taxpayer in writing to that effect. *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964); *Hintze v. IRS*, 879 F.2d 121, 126 (4th Cir. 1989) (quoting *Powell*). The taxpayer may then challenge the summons on any appropriate ground. *Id.*

■ To establish a prima facie case for enforcement, the IRS need only present " 'an affidavit of an agent involved in the investigation averring the *Powell* good faith elements.' No probable cause standard need be met." *Id.* (quoting *Alphin v. United States*, 809 F.2d 236, 238 (4th Cir.), *cert. denied*, 480 U.S. 935, 107 S.Ct. 1578, 94 L.Ed.2d 768 (1987) (citations omitted)). The party challenging the summons then "assumes the heavy burden of disproving the actual existence of a valid civil tax determination or collection purpose." *Id.* (citing *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221 (1978)). Here, the government has appended to its petition a declaration signed by Kubiet averring the *Powell* requirements, including proper service of the summons, and thus has met the initial burden for enforcement.

### III.

Streett's principal challenge to the summons rests on the fourth *Powell* requirement—that the IRS failed to follow the administrative steps required by the Code because the summons he received was not an "attested copy" under § 7603. Section 7603 provides that a summons issued under § 7602 "shall be served by the Secretary, by an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode." Streett argues that a carbon copy of the original summons, even if an accurate copy, is not an "attested copy." In order to be "attested," he maintains, the summons must bear a separate, signed notation that it is a correct copy of the original. Since the

summons was not so "attested," the government's petition for enforcement should be denied.

Neither the statute nor the regulations promulgated thereunder, Treas.Reg. § 301.7603–1, define the necessary attributes of an "attested copy." Nor is there any relevant legislative history. There is, however, a very recent Eighth Circuit decision that addresses the issue directly, *Mimick v. United States*, 952 F.2d 230 (8th Cir.1991). In *Mimick*, the court of appeals reversed the district court decision, *Mimick v. United States*, 91–1 U.S.Tax.Cas. ¶ 50,-070 at 87, 282, 1991 WL 34445 (D.Neb. 1991), on which Streett relies to challenge enforcement of the summons.

The taxpayers in *Mimick* sought to quash IRS administrative summonses served on them as well as two third-party recordkeepers. The circumstances of service were, for practical purposes, identical to those here. The summonses actually served were carbon copies of the originals retained by the IRS. And the IRS agent who served the summonses certified that he had handed "attested copies" of the summonses to the taxpayers and the recordkeepers. The agent testified that he had compared the service copies with the originals to make sure that they were correct; however, the service copies bore no signed notation that they were, in fact, accurate copies of the originals. Noting the absence of any reported decisions or case law defining "attested copy" under § 7603, the district court looked to *Black's Law Dictionary* for guidance. According to *Black's*, an "attested copy" of a document is "one which has been examined and compared with the original, with a certificate or memorandum of its correctness, signed by the persons who have examined it." Although the agent had examined the copies for deviation from the originals, the court reasoned, his failure to add a signed notation to that effect meant that the summonses were not "attested copies" within the meaning of § 7603. Since an administrative step required by the Code was not followed, *Powell*, 379 U.S. at 58, 85 S.Ct. at 255, the district court granted the taxpayers' motion to quash and denied the

government's petition for enforcement. 91–1 U.S.Tax.Cas. at 87,283.

On appeal, the Eighth Circuit agreed with the district court's construction of § 7603 but provided a more sophisticated explanation for its reading. The court noted the origin of the "attested copy" requirement of § 7603 in the Act of July 13, 1866, § 9, 14 Stat. 98, 102. Citing a contemporary definition of the verb "attest," *Webster's Dictionary* (rev. ed. 1864), the court concluded that the 39th Congress had likely intended to require a separate attestation that the summons served was a true copy of the original. Of course, in an age when copies of original documents were handwritten, a separate, signed certificate was the only way to assure the summoned party that the copy was in fact accurate. As in this case, the government contended that the subsequent development of carbon paper and other copying technologies means that service of a carbon copy satisfies the statutory requirement today, whatever the necessity of a separate attestation in the past. However, the court declined to infer "that Congress would, if it considered it, no longer require a separate attestation of copies of the original summons—especially in light of the ease with which documents may be made to appear genuine by the use of modern technology." It also noted that Congress had reenacted the provision several times without change, most recently in 1986. The court thus held that the carbon copies served by the IRS were not "attested copies" within the meaning of § 7603. *Mimick,* 952 F.2d at 231–32.

While the Eighth Circuit's reasoning is plausible, it is not necessarily convincing. It does seem eminently correct, as the court posited, that the 39th Congress, in enacting the original "attested copy" provision, intended that a revenue summons be served with a separate attestation. However, that fact does not necessarily mean that Congress had the same intent when it last enacted § 7603 in 1986. Presumably, the IRS was using Form 6638 and similar forms to serve "attested copies" of summonses in 1986. If that is so, although Congress failed to change the statutory language as first enacted, it also failed to

direct that administrative deviation from the form of summons originally required should be corrected. Thus, the silent reenactment of § 7603 supports conflicting inferences: either Congress intended to perpetuate the original procedural requirement or tacitly endorsed what had become the prevailing procedure of using carbon copies.

■ I need not decide that question, however. Despite its finding that the summonses failed to comport with Code requirements, the Eighth Circuit in *Mimick* held that the violation did not preclude enforcement of the summonses. The court relied on its own precedent, *United States v. Swanson,* 772 F.2d 440 (8th Cir.1985), where it held that failure to follow the procedures set forth in an IRS delegation order did not automatically render a summons unenforceable. In *Swanson,* the Eighth Circuit adopted the standard for enforcement of an IRS summons applied by the Fifth Circuit in *United States v. Payne,* 648 F.2d 361, 363 (5th Cir.1981), *cert. denied,* 454 U.S. 1032, 102 S.Ct. 570, 70 L.Ed.2d 476 (1981): the court must "'evaluate the seriousness of the [procedural] violation under all the circumstances, including the government's good faith and the degree of harm imposed by the unlawful conduct.'" 772 F.2d at 441 (quoting *Payne*). Applying this standard in *Mimick,* the court found that the failure of the IRS to comply with § 7603 was in good faith and that because the summonses were true copies, though unattested, the summoned parties had suffered no harm as a result of the government's error. *Mimick,* 952 F.2d at 232. Several other courts have reached the same conclusion under similar circumstances. *See Payne,* 648 F.2d at 363 (improper service under § 7603); *Holifield v. United States,* 677 F.Supp. 996, 998 (E.D.Wis.1987) (insufficient notice under § 7609); *United States v. Hamilton Fed. Sav. & Loan Ass'n,* 566 F.Supp. 755, 760 (E.D.N.Y.1983).

Under the standard applied in *Mimick,* Streett's challenge to the summons under § 7603 fails. Nothing here suggests that the failure of Kubiet to serve Streett with

an "attested copy" was not a good-faith error. Nor is there doubt that the IRS had legitimate reasons to investigate Streett's taxpaying history and issue the summons. The summons clearly serves the purposes of § 7602: the information sought by the IRS is necessary to determine Streett's income for the years in question and the amount of tax he might owe. *See United States v. LaSalle Nat'l Bank,* 437 U.S. 298, 316, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221 (1978) (purpose of good-faith inquiry is to determine whether IRS is honestly pursuing goals of § 7602). Similarly, Streett cannot point to any material harm that he suffered as a result of the lack of a separate attestation. The service copy was a correct copy of the original summons, *see Mimick,* 952 F.2d at 231, and since Kubiet served Streett personally, Streett could be reasonably sure that the summons was what it purported to be.

## IV.

Streett makes two subsidiary arguments. The first of his arguments is difficult to understand but apparently goes as follows: The Bureau of Alcohol, Tobacco and Firearms (ATF), an agency of the Treasury Department, has specific authority to implement §§ 7601–7606 of the Code pursuant to 27 C.F.R. § 70.22; since these regulations do not pertain to the IRS and since Streett has not engaged in activities involving alcohol, tobacco or firearms, the IRS was without power to issue the summons under § 7602.

■ To support this argument, Streett cites to a page from the index to the C.F.R. indicating the regulations that provide ATF with authority to implement the relevant Code sections. The patent flaw in the argument is that the cited ATF regulations are not the exclusive source of the government's authority to issue summonses under § 7602 of the Code. Section 7602 authorizes the Secretary of the Treasury to issue summonses for the purposes of determining the tax liability of "any person." Treas.Reg. § 301.7602–1 in turn authorizes the IRS to implement § 7602 with respect to "any person." Thus, the IRS had both

statutory and regulatory authority to issue the summons.

■ Streett's second argument, although easier to understand, has no more merit than the first. He contends that pursuant to Treas.Order No. 24 (1986), he is entitled to individual notice before the IRS can require him to keep tax records. Treas.Order No. 24 authorizes the district directors of the IRS "to require any person, *by notice served upon him,* to keep such records as shall show whether or not such person is liable for tax under the [Code]." (Emphasis added). Streett reads the order out of all context. The government's interpretation is more persuasive: the order was intended to apply to those situations where the IRS would require special records in order to determine a specific tax liability, such as liability for windfall profits tax, that routine tax records might not reflect. Thus, the absence of notice under Treas.Order No. 24 would not relieve Street of his duty to maintain adequate records to enable him to file a tax return. *See Jones v. C.I.R.,* 903 F.2d 1301, 1303 (10th Cir.1990) (citing 26 U.S.C. § 6001). Moreover, even if Streett's reading were correct, the treasury order would still afford little protection from the summons. The order authorizes the IRS to order a taxpayer to keep records. The summons, in contrast, merely calls for Streett to produce "[a]ll documents you possess or control that reflect income." Therefore, lack of notice under the treasury order would not excuse Streett from producing those income records in his possession that he has kept for other purposes.

For these reasons the government's petition for enforcement will be granted and Streett's motion to quash will be denied. The government is directed to submit a proposed form of order on or before January 24, 1992.