978 F.2d 1257
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA; W. Donald Bell, Special Agent,
Petitioners-Appellees,
v.
NO NAME VIDEO, LTD; Satterfield, Incorporated, d/b/a MS
Enterprises, d/b/a Accounting Associates,
Respondents-Appellants.
 No. 91-2722.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 3, 1992
Decided: October 19, 1992
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Alexander Harvey, II, Senior District Judge. (CA-91-1549-H)
 ARGUED: Robert Doran Grossman, Jr., Robert Grossman, Jr., P.C., Bethesda, Maryland, for Appellants.
 Charles Edward Brookhart, Tax Division, United States Department of Justice, Washington, D.C., for Appellees.
 ON BRIEF: Eric Horvitz, Robert Grossman, Jr., P.C., Bethesda, Maryland, for Appellants.
 James R. Bruton, Acting Assistant Attorney General, Gary R. Allen, Annette M. Wietecha, Joel A. Rabinovitz, Tax Division, United States Department of Justice, Washington, D.C.; Richard D. Bennett, United States Attorney, Baltimore, Maryland, for Appellees.
 D.Md.
 Affirmed.
 Before ERVIN, Chief Judge, WILLIAMS, Circuit Judge, and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Appellee, United States Internal Revenue Service (IRS), is investigating a possible tax liability of Sanford R. Shapiro for the years 1986-1989. The IRS issued summonses to Appellants No Name Video, Ltd. and Satterfield, Inc. (the corporations) pursuant to 26 U.S.C. § 7602 (1988). When the corporations refused to produce the documents, the IRS brought this action to enforce the summonses. The district court denied the corporations' motion to quash and granted enforcement. We now affirm.
 
 I.
 
 2
 Affidavits before the trial court reveal that in March 1983, Shapiro was convicted of filing false tax returns for the years 1975 and 1976. In April 1984, he married Maria Satterfield. He filed for bankruptcy in June 1985. No Name Video, Ltd. and Satterfield, Inc. (d.b.a. MS Enterprises and/or Accounting Associates) are wholly owned by Satterfield.
 
 
 3
 Shapiro is not an employee or officer of Satterfield's corporations, but a homemaker who runs errands for the corporations, dictates correspondence, gets information from the corporations' clients, and prepares tax returns. He signs the tax returns Satterfield prepares and he signs most company checks because Satterfield has arthritis and he is able to sign more neatly. He and Satterfield further aver that Shapiro has not contributed to her assets and that she owns their home and various accounts herself.
 
 
 4
 A client of Accounting Associates, Julie Winiarski, was told by Milton Friedman, an IRS Appeals Officer investigating her return, that Shapiro was on the "hit list". She understood this list to be 15 to 20 tax preparers whose customers' returns are singled out for auditing. Friedman told her it would be in her "best interests to have someone else prepare" her tax returns and that her return had been audited because she was an Amway distributor.
 
 
 5
 The IRS suspects Shapiro of hiding income. Shapiro and Satterfield filed joint returns for 1986 and 1988 and reported no taxable income for either year. Neither their 1987 return nor their 1989 return was received by the IRS. Its investigation of Shapiro for the years 19861989 included summonses to Satterfield's bank and department store accounts and to her two corporations-No Name Video and Satterfield, Inc.
 
 
 6
 On June 4, 1991, the IRS brought this action to enforce the summonses against No Name Video and Satterfield, Inc. Shapiro had previously brought two suits to quash the summonses directed at his wife's bank and store accounts. On July 11, 1991, the district court heard arguments concerning the bank and store accounts (captioned Shapiro v. United States, numbers H-91-933 and H-91-1223), denied the motions to quash, and ordered enforcement. At the July 11 hearing, Shapiro disputed any business connection between himself and his wife's two corporations. Although the parties discussed the propriety of the summons issued to the two corporations, the matter was not decided because it was not ripe for review.
 
 
 7
 In August 1991, the district court reviewed the government's motion and declaration to enforce the summons against the corporations as well as the corporations' response in opposition. Although Shapiro was not a party, the corporations attempted to raise some of the same defenses which Shapiro had raised in the earlier cases, such as the claim that the summonses were issued for purposes of harassment. The corporations also opposed the summonses on the grounds that the material sought was irrelevant and overbroad. On September 12, 1991, the district court granted enforcement without a hearing, commenting that the corporations had "advanced no new arguments which would persuade the Court to deny enforcement." Joint Appendix 28-29.
 
 II.
 A.
 
 8
 To enforce a tax summons issued pursuant to 26 U.S.C. § 7602, the IRS must make a minimal showing of the four elements of a prima facie case: that the information is sought for a legitimate purpose, that the information is relevant for that purpose, that the information is not possessed by the IRS, and that the information is sought following proper procedures. United States v. Powell, 379 U.S. 48 (1964); Alphin v. United States, 809 F.2d 236, 238 (4th Cir.), cert. denied, 480 U.S. 935 (1987).
 
 
 9
 The government's burden at this stage of the summary proceeding is a light one. Hintze v. IRS, 879 F.2d 121, 126 (4th Cir. 1989). Indeed, the IRS need only present "an affidavit of an agent involved in the investigation averring the Powell good faith elements" in order to establish a prima facie case for enforcement of a civil summons. Id. (quoting Alphin, 809 F.2d at 238). If the government succeeds in establishing a prima facie case for enforcement, the burden shifts to the party challenging the summons. Unlike the slight burden shouldered by the government in its prima facie case, however, the burden on the challenging party is a very heavy one. Id . at 126-27 and cases cited therein. The challenger must "disprov[e] the actual existence of a valid civil tax determination or collection purpose." Id. at 126 (quoting Alphin, 809 F.2d at 238); see also United States v. La Salle Nat'l Bank, 437 U.S. 298, 316 (1978).
 
 
 10
 The district court has discretion whether to conduct an evidentiary hearing in connection with summons enforcement proceedings. Hintze, 879 F.2d at 126 (4th Cir. 1989). Evidentiary hearings are by no means automatic to the challenger. As we stated in Hintze:
 
 
 11
 [O]nce the government has carried its initial burden to establish a prima facie case for enforcement, a party challenging IRS summonses will be entitled to an adversary hearing only upon the production of some substantive evidence corroborating the claim of abuse.
 
 
 12
 Id. at 126-27 (emphasis supplied). See also Alphin, 809 F.2d at 238 (it is proper for district court to dispose of the proceeding on the papers and without an evidentiary hearing if the challenging party cannot refute government's prima facie case with specific facts permitting an inference of some wrongful conduct by IRS).
 
 B.
 
 13
 Applying these standards to the facts of this case, we agree with the implicit holding of the district court that the IRS established a prima facie case for enforcement of the challenged summonses. The declaration of IRS special agent W. Donald Bell stated: (1) that agent Bell was assigned to investigate the potential income tax liabilities of Shapiro; (2) that the information sought from No Name and Satterfield, Inc. is necessary for the investigation of Shapiro as Shapiro "is disclaiming any interest in any business or in income from any commercial enterprise and yet there is reason to believe he is actively engaged in the accounting business"; (3) that the "information sought ... is not in the possession of the Internal Revenue Service"; and (4) that Bell had followed "[a]11 of the relevant provisions of the Internal Revenue Code ... with respect to issuing, serving and giving notice of the summonses." Joint Appendix at 15-18. Since the IRS carried its threshold burden under Powell and Alphin, the burden shifted to the corporations to come forth with sufficient evidence of administrative abuse such that the district court should have either quashed the summonses or permitted an adversarial hearing on the matter.
 
 
 14
 After reviewing the record, we conclude that appellants have not offered any particularized facts to refute the IRS's prima facie case. The corporations first challenge the summonses on the ground that the materials sought are not relevant to an investigation of Shapiro because none of their financial records regard Shapiro. Section 7602 of the Internal Revenue Code gives the IRS the authority to investigate the potential tax liability of a taxpayer through the use of summonses to third parties such as corporations. 26 U.S.C. § 7602.* This provision of the Code has been given an expansive reading to enable the IRS to perform its responsibilities to enforce the Tax Code as mandated by Congress. United States v. Arthur Young & Co., 465 U.S. 805, 816 (1984) (section 7602 gives IRS "expansive information-gathering authority"); United States v. Euge, 444 U.S. 707 (1980); Hintze v. IRS, 879 F.2d 121 (4th Cir. 1989). Furthermore, the threshold for determining relevance in a Section 7602 summons is a low one. The Supreme Court has approved a minimal test for relevance-whether the data "might throw light" upon the correctness of a return. United States v. Arthur Young & Co., 465 U.S. at 813-15 & n.11. As the Supreme Court explained:
 
 
 15
 The language "may be" [in section 7602] reflects Congress' express intention to allow the IRS to obtain items of even potential relevance to an ongoing investigation.... The purpose of Congress is obvious: the Service can hardly be expected to know whether such data will in fact be relevant until they are procured and scrutinized.
 
 
 16
 Id. at 814.
 
 
 17
 Judged from the broad grant of authority to the IRS under Section 7602 and the low threshold of relevance, the material sought from the two corporations is relevant to the investigation of the potential tax liability of Shapiro. Shapiro claims that he earns no income and is not engaged in the accounting business owned by his wife. The IRS is suspicious of Shapiro's actual involvement in the corporations, pointing to the fact that Shapiro's signature appears on returns which have been prepared on behalf of clients of one of the corporations. The appellants' argument rests on the assumption that the corporations have no financial relationship with Shapiro, an assumption that cannot be proven without aid of the documents the IRS seeks through the summonses. Section 7602 enables the IRS to review documents and records from the corporations to determine the veracity of Shapiro's claims and any potential tax liability.
 
 
 18
 The corporations' second challenge to the summonses, related to the first, is that the summonses are overbroad. Specifically, the corporations object to the inclusion of client lists and ledgers, which they claim will threaten their businesses. Based on the above discussion of the grant of authority to the IRS in Section 7602 and the broad notion of relevance, we conclude that the client lists satisfy the test for relevance. The IRS is suspicious of Shapiro's claimed volunteer work for the corporations and has reason to believe that Shapiro is actively engaged in the accounting business. Discussions with clients of the corporations regarding business contact, if any, with Shapiro will aid the IRS in its investigation of Shapiro's involvement with the corporations and any potential tax liability.
 
 
 19
 The corporations' third and underlying challenge to the summonses is that the IRS had an improper purpose for the tax summonses: "to harass Shapiro and destroy his wife's businesses." Appellant's Brief at 7. See Powell, 379 U.S. at 58. This claim is based on the belief that Shapiro is on an IRS "hit list." The corporations have submitted two affidavits that make reference to Shapiro's presence on an IRS "hit list."
 
 
 20
 After reviewing the affidavits as well as the entire record, we conclude that neither corporation has offered any particularized facts which demonstrate such an improper IRS motive. Mere allegations are insufficient to meet the burden of refuting the IRS's prima facie case. See Hintze, 879 F.2d at 128 ("[a]1legations supporting a 'bad faith' defense are ... insufficient if conclusionary," quoting from United States v. Garden State Nat'l Bank, 607 F.2d 61, 71 (3rd Cir.1979)); Alphin, 809 F.2d at 238 (heavy burden to refute IRS prima facie case). The Shapiro affidavit is a mere allegation of bad faith on the part of the IRS. The Winiarski affidavit likewise fails to particularize facts supporting an inference of abuse. The affidavit states that during a meeting between the Winiarskis and IRS Appeals Officer Milton Friedman, Friedman told the Winiarskis that Shapiro was on a "hit list," explained as "a list of ten to twenty tax preparers whose client's returns were selected for examination by the Internal Revenue Service on the sole basis ... that those on the 'hit list' were the preparers." According to the affidavit, Mr. Friedman told the Winiarskis that it would be in their best interests to have someone else prepare their returns. As a result of the statements from Mr. Friedman, Winiarski stated that she is "extremely concerned about continuing to use Accounting Associates as my accountants." While there may be some incidental loss to appellants' businesses by virtue of the IRS investigation of Shapiro, such loss is merely speculative and is not evidence that the IRS is pursuing its investigation of Shapiro in bad faith.
 
 
 21
 Finding that the corporations have not come forth with particularized facts of bad faith by the IRS in issuing summonses to the corporations, we cannot conclude that the district court abused its discretion or committed "clear error" in enforcing the summonses without a hearing.
 
 C.
 
 22
 Aside from attacking elements of the IRS's prima facie case, Appellants complain about the district judge referring to the July 11 hearing on Shapiro's motions to quash other summonses and noting that the corporations had "advanced no new arguments which would persuade the Court to deny enforcement" here. The corporations contend the trial court should not have considered the record developed in the earlier hearing because the present summonses were not before it when it ruled in those two suits.
 
 
 23
 We think that the district court was justified in examining the prior hearing, along with the new arguments, in coming to its decision in the instant case. First, the district judge examined the total record before it and made independent findings of fact based on all of the evidence. Second, the July hearing involved the same investigation, the same agent, and the same group of summonses at issue in this case. For example, the July hearing already explored and dismissed the claim that the IRS had an improper purpose to harass Shapiro personally. Had Shapiro been a party to this action, principles of collateral estoppel would have precluded his relitigating those issues decided in the earlier actions. See Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979). The July hearing also addressed Shapiro's involvement with the corporations. Because of the interrelatedness of the summonses and the parties, we conclude that the district judge was justified in examining the record of the July hearing in coming to an independent decision in this case. Such a practice is consistent with the goal of concluding summons enforcement proceedings quickly, so that the IRS's investigation will not be delayed. See United States v. Barrett, 837 F.2d 1341, 1349 (5th Cir. 1988), cert. denied, 492 U.S. 926 (1989) (summons enforcement proceedings are"intended to be summary in nature"). It is also consistent with the court's obligation to ensure that its process is not being abused. United States v. Powell, 379 U.S. 48, 58 (1964). Furthermore, by reviewing the record of a closely related matter, the court conserved scarce judicial resources. We cannot conclude that the district judge committed reversible error in looking to the July hearing as part of all of the evidence in determining that appellants had failed to rebut the government's prima facie case for enforcement of the summonses.
 
 III.
 
 24
 IRS has made its prima facie case for enforcement of the summonses; Appellants have not demonstrated that the trial court was clearly erroneous to grant enforcement. Hintze v. IRS, 879 F.2d 121, 125 (4th Cir. 1989). We affirm.
 
 AFFIRMED
 
 
 *
 Section 7602 reads in relevant part:
 (a).... For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax ... the Secretary
 (1) To examine any books, papers, records, or other data which may be relevant or materials to such an inquiry;....
 26 U.S.C. § 7602 (1988) (emphasis added).