**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 00-31430
_____

ZBIGNIEW EMILIAN MAZUREK,

Plaintiff-Appellant,

versus

UNITED STATES of AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

November 7, 2001

Before GARWOOD and WIENER, Circuit Judges, and CLEMENT,[*] District Judge.

WIENER, Circuit Judge:

Plaintiff-Appellant Zbigniew Emilian Mazurek challenges the district court's denial of his motion to quash the summons of the U.S. Internal Revenue Service (the "IRS"), issued in response to a request by the French Tax Authority (the "FTA"), for Mazurek's financial records. We conclude that, because the IRS acted in good faith and met its burden under United States v. Powell,[1] it is

---

[*]    Chief Judge of the Eastern District of Louisiana, sitting by designation.

[1]    379 U.S. 48 (1964).

entitled to enforcement of its summons.  We therefore affirm the ruling of the district court.

I.

FACTS AND PROCEEDINGS

Mazurek is the subject of an investigation by the FTA concerning his civil liability for French taxes.  In the course of its investigation, the FTA requested that the IRS obtain Mazurek's relevant financial information located in the United States.  The FTA made this request pursuant to the terms of the Convention Between the Government of the United States and the Government of the French Republic for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Tax on Income (the "Treaty" or the "U.S.-France Tax Treaty").  In relevant part, the Treaty provides for the exchange of tax and financial information between France and the United States, but does not obligate either country to supply information that is not obtainable under the laws of either country.

Assistant IRS Commissioner (International) John T. Lyons, designated under the Treaty as the Competent Authority for the United States, reviewed the FTA's request and found it to be within the guidelines of the Treaty.  After Lyons's approval, an IRS agent issued a summons to Bank One of Louisiana on behalf of the FTA, ordering that bank to turn over Mazurek's relevant financial documents to the IRS.  In accordance with Internal Revenue Code ("I.R.C.") § 7609, Mazurek was notified of the service of the

2

summons. In response, Mazurek exercised his statutory right under I.R.C. § 7609 by filing a motion to quash the summons. The IRS responded with a motion seeking to dismiss Mazurek's motion for failure to state a claim and to obtain an order enforcing the summons.

The district court referred the matter to a magistrate judge who, after hearing from both parties, issued a Report and Recommendation. In it the magistrate judge concluded that discovery and a full evidentiary hearing were not necessary, and the summons should be enforced. Adopting the magistrate judge's Report and Recommendation, the district court denied Mazurek's motion to quash and granted the IRS's motion to enforce.

During the course of these proceedings in the district court, Mazurek initiated a separate action in a French forum, contesting the FTA's determination that he was a French resident for the period covered by the FTA's investigation. In his district court motion to quash and his response to proceedings before the magistrate judge (and again on appeal), Mazurek asserted that under French law the FTA could not continue its investigation until a final decision on his residency status is made, arguing that it would therefore be improper for the IRS to provide his financial information to the FTA at this time. The magistrate judge found this argument to be inapposite, concluding that the IRS had presented a prima facie case for enforcement and that Mazurek had failed to allege facts or produce evidence sufficient to undermine

3

the government's prima facie case.  More to the point, the magistrate judge determined that Mazurek had not alleged facts sufficient to show that the IRS was acting in bad faith in issuing the summons and seeking to enforce it on behalf of the FTA.  The magistrate judge observed that Mazurek's arguments and requests for information inappropriately focused on the legitimacy and bad faith of the FTA in requesting the summons rather than on the good faith of the IRS in seeking to comply with that request under the Treaty.  The magistrate judge was convinced that Mazurek's arguments regarding residency were directed at matters of French law best left for French authorities to resolve.  After the district court adopted the magistrate judge's report and entered judgment in favor of the IRS, Mazurek timely appealed.

## II.

## ANALYSIS

### A.   Enforcement of the Summons

#### 1.  Standard of Review

In reviewing the district court's grant of a motion to enforce a summons, we accept all facts found by the district court unless they are clearly erroneous.[2]  We then determine whether the

---

[2]  Fed. R. Civ. P. 52(a).

government has demonstrated a prima facie case by fulfilling the four factors delineated in Powell.[3] The burden on the government to produce a prima facie case is "slight" or "minimal."[4] Next, if the government meets its burden, we assess whether the opponent of the summons fulfills his "heavy" burden of rebutting the proponent's case by either undermining the proponent's contentions regarding any of the Powell factors or by demonstrating that enforcement of the summons would result in an "abuse" of the court's process.[5]

2. The IRS meets the Powell Factors

In Powell, the Supreme Court identified four factors that the government must show to establish a prima facie case for summons enforcement: (1) The investigation is conducted pursuant to a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the information sought is not already within the IRS's possession; and (4) the administrative steps required by the I.R.C.

---

[3] 379 U.S. 48 (1964).

[4] See Barquero v. United States, 18 F.3d 1311, 1317 (5th Cir. 1994); United States v. Davis, 636 F.2d 1028, 1034 (5th Cir. 1981); see also Lidas v. United States, 238 F.3d 1076, 1082 (9th Cir. 2001) (citing Barquero and interpreting the same Treaty provision as the instant case).

[5] See United States v.Southeast First Nat. Bank, 655 F.2d 661, 664-65 (5th Cir. 1981); see also Lidas, 238 F.3d at 1081 (resolving a summons dispute under the U.S.-France Tax Treaty and holding that an affidavit by Lyons, making the same declarations as in the instant case, established a prima facie case and that petitioners could not meet their heavy burden of rebutting the affidavit).

have been followed.[6]  The government's minimal burden at this stage can be fulfilled by a "simple affidavit" by the IRS agent issuing the summons.[7]  The Powell framework is employed even when, as here, we consider a summons issued pursuant to a request by a treaty partner.[8]

Assistant IRS Commissioner Lyons reviewed the FTA's request and submitted an affidavit to the district court stating that: (1) The FTA's request was properly made; (2) the requested information was not already in the possession of either the IRS or the FTA; (3) the requested information could be relevant to an investigation of Mazurek's French civil tax liability; and (4) the same type of information could be obtained by the FTA under French law and, if the situation were reversed, the United States could properly request such information from France.  On its face, the affidavit establishes the IRS's compliance with Powell's last three factors. In addition, the IRS meets Powell's first ("legitimate purpose") requirement because it is attempting to fulfill the United States's obligations under the Treaty efficiently.  Assisting the investigation of a foreign tax authority has been held to be a legitimate purpose by itself.[9]  With the Lyons affidavit,

---

[6]  379 U.S. 48 at 57-8.

[7]  Davis, 136 F.2d at 1034; Lidas, 238 F.3d at 1082.

[8]  United States v. Stuart, 489 U.S. 353, 356 (1989).

[9]  See United States v. A.L. Burbank & Co., 525 F.2d 9, 16-7 (2d. Cir. 1975) ("American administrative procedures (which include

6

therefore, the IRS established a prima facie case under <u>Powell</u>.

B.  <u>Mazurek's Failed Challenge</u>

To rebut the government's prima facie case, Mazurek had either to refute one of the <u>Powell</u> factors that the IRS established or to show that enforcement in the district court would amount to an "abuse" of the judicial process.[10]  An abuse of the judicial process occurs when a summons is sought for an "improper purpose, such as ... harass[ing] the taxpayer, ... put[ting] pressure on him to settle a collateral dispute" or obtaining information solely for a criminal prosecution under the guise of a civil liability investigation.[11]

1.  <u>Abuse of Process</u>

As already noted, in contrast to the IRS's slight prima facie burden, the taxpayer's burden at the rebuttal stage is heavy. Mazurek cannot show that the IRS's summons constituted an abuse of the judicial process.  He has adduced no evidence, and indeed has not even alleged, that the summons is being used to harass,  to gain leverage, or pretextually to develop a criminal investigation.

Furthermore, even if we were to look into Mazurek's legal

---

the administrative summonses in issue here) are properly utilized where the purpose is <u>solely</u> to assist the investigation of a Canadian potential tax liability.") (parentheses in original) (emphasis added).

[10]  <u>Powell</u>, 379 U.S. at 58; <u>Davis</u>, 636 F.2d at 1034.

[11]  <u>Powell</u>, 379 U.S. at 58; <u>United States v. Southeast First Nat. Bank</u>, 655 F.2d 661, 665 (5th Cir. 1981).

proceedings in France, we would not find that he has demonstrated that the FTA's Treaty request for a summons constituted an abuse of judicial process, i.e., that the French investigation was or is being conducted for an illegitimate purpose. Mazurek incorrectly conflates his challenge to his residency determination and the alleged illegitimacy of the FTA's investigation. It does not follow, simply because Mazurek challenges the FTA's residency determination, that the FTA's investigation is being conducted for an improper purpose. Mazurek has presented no evidence to suggest that the FTA is investigating him so as to harass or gain leverage. To the contrary, Mazurek concedes that the FTA's sole purpose is to determine his civil liability for French taxes. Therefore, even if French law requires the FTA to suspend its investigation pending resolution of the residency appeal, there is no indication that the FTA's purpose is not legitimate in any way. Thus, Mazurek must challenge the four Powell factors directly.

    2.  The Powell Factors

    Of the four Powell factors, the only one that Mazurek could conceivably contest is the "legitimate purpose" requirement. He attempts to do this by arguing that, because he was not a resident of France for the periods implicated by the FTA investigation, any request for information covered by the investigation is not for a legitimate purpose. Essentially, Mazurek contends that, during the time that the determination of his residency status is awaiting final resolution in a French court, the FTA's request cannot be

8

legitimate.

The problem with this reasoning, as the magistrate judge noted, is that Mazurek focuses on the legitimacy of the FTA's investigation, not on the legitimacy of the IRS's compliance with the FTA's request. Yet, to rebut the Powell requirement, Mazurek must show that the IRS is acting in bad faith.[12] As long as the IRS acts in good faith, it need not also attest to — much lest prove — the good faith of the requesting nation.[13] Requiring district courts and the IRS to look into the good faith of the requesting country's investigation would — at least when, as here, the taxpayer concedes that the treaty partner is interested only in civil tax collection — unwisely necessitate an inquiry into the propriety of the FTA's actions under French law. And, under the plain language of Stuart, Mazurek has failed to show that the IRS acted improperly.

Perhaps Mazurek's strongest argument for quashing the summons is his contention that executing the summons would expand the FTA's rights by allowing it access to information, through IRS compliance, that it could not obtain under French law. Mazurek does not dispute that, if he were a French resident, the FTA would have the right to request such information from the United States.

---

[12] Stuart, 489 U.S. at 370 ("So long as the IRS itself acts in good faith, as the term was explicated in United States v. Powell [citation omitted] and complies with applicable statutes, it is entitled to enforcement of its summons.").

[13] Id.

Rather, he claims that, under French law, the FTA must suspend its investigation once he challenges his residency and may not reinstate it while the determination of his residency status for the years in question is pending. If the FTA must suspend its investigation during the appeal, Mazurek reasons, then allowing the IRS to provide the FTA with the requested information during that time permits the FTA to circumvent French law and obtain information at a time that it could not obtain it directly.[14]

It is at least arguable that the FTA cannot use United States authority to expand its own rights and procure information that the FTA could not acquire under French laws. Mazurek would support this argument by references to the Commentary to the Model Tax Treaty and to non-precedential case law addressing the exchange provisions of other U.S. Tax Treaties. The Commentary to the Model Tax Treaty, which contains language similar to the U.S.-France Tax

---

[14] The IRS submitted affidavits from Competent U.S. Authorities which indicate that the proceedings in French court do not affect the exchange of information between the U.S. and France. The Supplemental Declaration of John T. Lyons states:

> Upon being advised of this proceeding and certain represenations being made to the Court by Mr. Mazurek, Christiane Marechal, Tax Attache to the Embassy of France, and current Competent Authority for the French Government, has informed me as follows:
> ....
> (b) Under French law, the filing of Mr. Mazurek's appeal of the residency determination does not affect or require the suspension of the prior request for exchange of information forwarded to the United States pursuant to Article 27 of the Convention.

10

Treaty, states, in relevant part:

> [A] Contracting State cannot take advantage of the information system of the other Contracting State if it is wider than its own.[15]

The United States tax treaties currently in force are based, in large part, on the Model Treaty.[16]  Hence, contends Mazurek, the Commentary to the Model Treaty should provide some guidance in interpreting the Treaty at issue.  In addition, United States v. Lincoln First Bank, one of the first cases to address the discretionary exchange provisions of U.S. Tax Treaties like the one here at issue, appears to support Mazurek's contention that a foreign nation may not use the administrative processes and governmental agencies of the United States to obtain information that the foreign nation cannot obtain under its own laws.[17]

Although these assertions are correct in the abstract, there are several reasons why Mazurek's argument is not wholly convincing under the instant circumstances.  First, the Treaty provides in relevant part:

---

[15]  Organization for Economic Co-Operation and Development, Model Treaty, Art. 26, 1977 Revised Commentary.

[16]  Dennis D. Curtin, Exchange of Information Under the United States Tax Treaties, 12 Brook. J. Int'l L. 35, 45–46 (1986).

[17]  United States v. Lincoln First Bank, 1980 WL 1500 (S.D.N.Y. 1980)(interpreting the U.S.-Norway Tax Treaty, which included a provision identical to the one at issue, and stating, "The governmental agencies of the United States should not be employed to provide information to a foreign country which could not be obtained under the laws of that country.  A holding to the contrary could result in an unintended circumvention of applicable foreign laws and related domestic laws.").

11

> In no case shall the provisions of paragraph 1 [detailing the information that can be properly requested and the proper treatment of that information by the requesting State] be construed so as to impose on a Contracting State the obligation:
>> (a) to carry out administrative measures at variance with the law or the administrative practice of that or of the other Contracting State;
>> (b) to supply particulars that are not obtainable under the laws or in the normal course of the administration of that or of the other Contracting State.[18]

Thus, even though it does not mandate the exchange of information at variance with French law, neither does the plain language of the Treaty forbid compliance with an otherwise proper treaty request.

Second, although the Commentary to the Model Treaty provides guidance, the IRS's specific commentary and advice on the U.S.-France Tax Treaty should be given greater weight. As the IRS notes, the Treasury Department's Technical Explanation of Article 27 provides only that "[e]ither Contracting State may ... at its discretion, subject to the limitation of the paragraph and domestic law, provide information that it is not obligated to provide under the provisions of this paragraph."[19] The Treasury Department apparently intended to provide broad discretionary authority to the Competent Authority when considering a treaty partner's request. Moreover, the Treasury Department's Technical Explanation of Article 27 does not restrict the plain meaning of the Treaty

---

[18] U.S.-France Income Tax Treaty, Art. 27 ¶ 2 (emphasis added).

[19] See Treasury Department's Technical Explanation of Article XXVII, 2 Tax Treaties (CCH) ¶ 3058 at 27, 199-43.

language in any way.

Third, <u>Lincoln</u>'s continued viability is questionable.  The Supreme Court's language in <u>Stuart</u> seems to end the enforcement inquiry with a determination that the IRS is acting in good faith. A reasonable reading of <u>Stuart</u> suggests that an assessment of what would be allowed or disallowed under a foreign nation's law is unnecessary.  Moreover, a recent case from the Southern District of New York, where <u>Lincoln</u> was decided, indicates that <u>Lincoln</u> may no longer be good law, even within the jurisdiction that decided it.[20]

Finally, even if we were to assume that this country is prohibited from supplying information that the FTA could not obtain under French law, Mazurek's contention in the instant case would fail because the prohibition he asserts is merely temporal rather than substantive.  In other words, the gravamen of his contention is that French law prohibits the FTA from gathering  materials for

---

[20]  <u>Azouz v. United States</u>, 1999 WL 1581401, *1 (S.D.N.Y. 1999) (interpreting Art. XXVII of the U.S.-Canada Tax Treaty, which is identical to the provision at issue, and rejecting, as inapposite, petitioner's contention that the summons violated Canadian law):

> Petitioner's reliance on <u>United States v. Lincoln First Bank</u> [citation omitted] does not change this result. <u>Lincoln First Bank</u> predates the Supreme Court's ruling in <u>Stuart</u> and the Treasury Department's Technical Explanation of Article XXVII, CCH Tax Treatise ¶ 1950, at 21, 016-3 (contracting States may 'provide information that would not be available to the requesting State under its law or administrative practice or that in different circumstances would not be available to the State requested to provide the information.').  <u>Lincoln First Bank</u> is also at odds with the avowed goals of the Convention and its predecessor. <u>See</u>, <u>e.g.</u>, <u>A.L. Burbank</u> [citation omitted].

13

its investigation while he continues to appeal the French determination of his residency. Mazurek cannot, and does not, contend that as a general, substantive matter of French law, the FTA cannot obtain access to such financial information at all. Thus, even if under French law the FTA was not permitted to continue its investigation pending final determination of the residency issue, the FTA retains the substantive right to procure the requested information. Viewed in this light, enforcement of this IRS summons, issued pursuant to the FTA's request before commencement of Mazurek's residency appeal, would not constitute an expansion of the rights that the FTA otherwise possesses under French law — or under the laws of this country for that matter.

## C. Mazurek's Request for Discovery and an Evidentiary Hearing

### 1. Standard of Review

The scope of discovery and availability of a hearings on a motion to quash a summons is left to the sound discretion of the district court.[21] Therefore, we review that court's denial of Mazurek's request for discovery, and for a full evidentiary hearing, for abuse of discretion.

### 2. Denial of Mazurek's Request

Mazurek argues that he should have been afforded an

---

[21] See Hintze v. Internal Revenue Service, 879 F.2d 121, 126 (4th Cir. 1989) ("[W]hether to conduct an evidentiary hearing in the course of summons enforcement proceedings is a matter committed to the sound discretion of the district court.") overruled on other grounds, United States v. Church of Scientology, 506 U.S. 9 (1992).

opportunity for discovery and a full evidentiary hearing.  The magistrate judge decided, however, that discovery was unnecessary and granted the IRS a protective order covering the documents Mazurek requested.  In so doing, the magistrate judge stated that "[t]he court agrees with the government's argument that plaintiff's discovery requests and requests for admission would deal with French governmental actions and interpretations of French law which are beyond the power of this court to review."  Nevertheless, the magistrate judge did allow Mazurek to supplement the record with any evidence related to his motion to quash the summons.

Mazurek has not established any abuse of discretion.  First, as noted by the Supreme Court, allowing full opportunities for discovery would contravene the purpose of a summons enforcement proceeding, which is summary in nature.[22]  The Fourth Circuit reviewed case law from several circuits (including this one) in relation to discovery and evidentiary hearings for summons proceedings and concluded that "[t]here is no requirement that the court conduct such a hearing or permit discovery in each and every case."[23]

---

[22]  Stuart, 489 U.S. at 369 (citing the legislative history of I.R.C. § 7602(c)).

[23]  Hintze, 879 F.2d at 126-27 (4th Cir. 1989)(quoting United States v. Harris, 628 F.2d 875, 879 (5th Cir. 1980) ("A taxpayer's right to an adversary hearing on the good faith issue is not absolute."); United States v. Southern Tanks, Inc. 619 F.2d 54, 56 (10th Cir. 1980) ("As a general rule, discovery is available in summons enforcement proceedings only in extraordinary situations.")).

15

Second, as Mazurek's argument on appeal confirms, the information he sought to procure through discovery and to present during an evidentiary hearing relates to the propriety of the FTA's investigation under French civil tax law. His document requests reflect this same focus. Producing evidence that may demonstrate the bad faith of a French tax agency purely as a matter of French civil tax law is irrelevant to the only good faith issue under Powell, ie., the good faith of the IRS in honoring the French request. And, Mazurek does not seek to discover, or allege that he needs to discover, information that would impugn the good faith of the IRS in issuing the summons or enforcing it in compliance with the FTA's request.

District courts are afforded wide leeway in fashioning the scope of discovery in summons enforcement proceedings because ultimate issues of responsibility are not decided in these proceedings. Given this broad discretion and Mazurek's misdirected discovery requests, we are satisfied that the district court acted well within its discretion in denying discovery and an evidentiary hearing.

## III.

## CONCLUSION

For the foregoing reasons, Mazurek's appeal from the denial of his motion to quash the IRS's summons is denied. The district court's rulings are, in all respects,

AFFIRMED.

16