Nick MURATORE, et al., Plaintiffs,

v.

DEPARTMENT OF THE TREASURY,
et al., Defendants.

No. 03–MC–6015L.

United States District Court,
W.D. New York.

April 15, 2004.

Michael Burger, Dibble, Miller & Burger, P.C., James A. Marino, Rochester, NY, for Plaintiffs.

Karen Wozniak, U.S. Department of Justice, Washington, DC, for Defendants.

## DECISION AND ORDER

LARIMER, District Judge.

Petitioners, Nick and Kathryn Muratore ("the Muratores") and Executive Session, Inc. ("ESI"), filed a petition to quash several summonses issued by the Internal Revenue Service ("IRS"), which seek various information concerning petitioners' financial transactions, as part of an investigation concerning Nick Muratore's [1] federal income tax liability for the tax years 1999, 2000 and 2001. Respondents Department of the Treasury, IRS and Special Agent Jarod Koopman [2] have filed a motion to enforce the summonses.

## DISCUSSION

### I. General Principles

"Because our system of federal taxation relies on self-reporting, it is essential that the IRS have the power to issue administrative summonses in order to have effective oversight." *Upton v. I.R.S.*, 104 F.3d 543, 545 (2d Cir.1997) (citing *United States v. Arthur Young & Co.*, 465 U.S. 805, 816, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984), and *United States v. Bisceglia*, 420 U.S. 141, 145–46, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975)).

---

**1.** Since most of the matters raised here concern Nick rather than Kathryn Muratore, future references to "Muratore" will refer to Nick Muratore only, unless otherwise specified.

**2.** For the sake of convenience and clarity, respondents will be collectively referred to simply as "IRS."

To that end, in 26 U.S.C. § 7601, "Congress gave the IRS a 'broad mandate to investigate and audit persons' to insure compliance with federal tax laws." *Upton,* 104 F.3d at 545 (quoting *Bisceglia,* 420 U.S. at 145, 95 S.Ct. 915); *see also Miller v. United States,* 150 F.3d 770, 772 (7th Cir.1998) ("the IRS is entitled to broad latitude in issuing summonses to enforce the tax laws").

"As a necessary incident to the investigatory power," Congress has given the IRS "expansive authority" to:

> summon the person liable for tax . . . or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry.

*Upton,* 104 F.3d at 545–46; 26 U.S.C. § 7602(a)(2)). The Second Circuit has described this as a "wholesale grant of summons authority" that is "only 'subject to the traditional privileges and limitations.'" *United States v. Euge,* 444 U.S. 707, 711, 714, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980)).

Pursuant to 26 U.S.C. § 7609, whenever a summons is served upon a "third-party recordkeeper,"[3] the IRS must give notice of the summons to the person who is identified as the subject of the records sought (ordinarily the taxpayer who is the subject of an IRS audit or investigation). 26 U.S.C. § 7609(a)(1). That person then has the right to initiate a proceeding in federal court to quash the summons. 26 U.S.C. § 7609(b), (h)(1).

■ Although a taxpayer cannot bring a proceeding to quash an IRS summons served on him personally, *see Pylar v.*

*United States,* 835 F.Supp. 1033, 1035 (W.D.Mich.1993); *Tabar v. United States,* 142 F.R.D. 343, 344 (D.Utah 1992), the taxpayer can refuse to comply with the summons, and, "if the IRS seeks enforcement of the summons in district court, challenge the summons in district court." *United States v. Ritchie,* 15 F.3d 592, 597 (6th Cir.), *cert. denied,* 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994).

■ To obtain enforcement of a tax summons, whether in opposition to a petition to quash or on its own motion to enforce the summons, the IRS must show that it has complied with four requirements established by the Supreme Court in *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964): that the investigation has a proper purpose; the information sought may be relevant to that purpose; the IRS does not already have the information; and the IRS has followed the statutory requirements for issuing a summons.

■ These "requirements impose only a minimal burden" on the IRS. *Miller,* 150 F.3d at 772. Affidavits by the investigating agent ordinarily are sufficient to make out the prima facie case for enforcement. *PAA Mgmt., Ltd. v. United States,* 962 F.2d 212, 219 (2d Cir.1992).

Once the government has met its prima facie burden, "the taxpayer faces a 'heavy burden' to either present facts to disprove one of the *Powell* factors, or to show that the IRS issued the summons in bad faith." *Miller,* 150 F.3d at 772 (quoting *2121 Arlington Heights Corp. v. IRS,* 109 F.3d 1221, 1224 (7th Cir.1997)); *see also United States v. LaSalle Nat'l Bank,* 437 U.S. 298, 316, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978) (taxpayer's burden is a "heavy" one, which

---

**3.** Who constitutes a third-party recordkeeper is set forth in the statute, *see* 26 U.S.C. § 7609(a)(3). There is no dispute here that, aside from petitioners themselves, the persons and entities served in this action are third-party recordkeepers.

he must meet by "disprov[ing] the actual existence of a valid civil tax determination or collection purpose by the Service"); *United States v. Insurance Consultants of Knox, Inc.*, 187 F.3d 755, 759 (7th Cir. 1999) ("The taxpayer can rebut the government's prima facie case only by alleging 'specific facts' in rebuttal") (quoting *Crystal v. United States*, 172 F.3d 1141, 1144 (9th Cir.1999)), *cert. denied*, 528 U.S. 1081, 120 S.Ct. 802, 145 L.Ed.2d 676 (2000); *United States v. Derr*, 968 F.2d 943, 945 (9th Cir.1992) ("Enforcement of a summons is generally a summary proceeding to which a taxpayer has few defenses"); *United States v. White*, 853 F.2d 107, 111 (2d Cir.1988) ("the taxpayer's burden of proof to establish that enforcement would be improper is significantly greater than the burden on the government to show a legitimate purpose"); *United States v. Kis*, 658 F.2d 526, 535 (7th Cir.1981) (noting taxpayer's "extraordinarily heavy burden" to rebut IRS's prima facie case), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982).

Because "[s]ummons enforcement proceedings are intended to be summary in nature so that an investigation can advance to an ultimate determination as to whether tax liability exists," *White*, 853 F.2d at 111, "the primary issue presented by a summons enforcement proceeding is not whether the IRS has established, or is even likely to establish guilt or liability on the taxpayer's part; rather, the issue is whether the IRS had a valid tax determination or collection purpose in issuing its summons." In addition, "[u]nless a taxpayer opposing enforcement of a summons makes a 'substantial preliminary showing' of an alleged abuse, neither an evidentiary hearing nor limited discovery need be or-

dered by the district court." *United States v. Tiffany Fine Arts, Inc.*, 718 F.2d 7, 14 (2d Cir.1983) (quoting *United States v. Morgan Guaranty Trust Co.*, 572 F.2d 36, 42–43 n. 9 (2d Cir.), *cert. denied*, 439 U.S. 822, 99 S.Ct. 89, 58 L.Ed.2d 114 (1978)), *aff'd*, 469 U.S. 310, 105 S.Ct. 725, 83 L.Ed.2d 678 (1985)[4]; *see also 2121 Arlington Heights Corp.*, 109 F.3d at 1226 ("Summons enforcement proceedings are intended to be summary in nature," and it is left to the district court's discretion to determine whether a hearing is necessary) (citations omitted).

## II. Analysis

Applying these standards to the case at bar, I find that the IRS has made out a prima facie case, and that petitioners have failed to meet their burden of disproving any of the *Powell* factors or of showing bad faith on the IRS's part.

In general, petitioners' challenge to the summonses rests on their assertion that the summonses are overly broad, and that the IRS has not demonstrated the relevance of many of the documents sought. Under 26 U.S.C. § 7602, however, the IRS is entitled even to information that has only "potential relevance" to its investigation, and it is not "required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense." *See Arthur Young*, 465 U.S. at 814, 104 S.Ct. 1495; *see also United States v. Norwest Corp.*, 116 F.3d 1227, 1233 (8th Cir.1997) ("The IRS need not state with certainty how useful, if at all, the summoned material will in fact turn out to be") (citing *Arthur Young*, 465 U.S. at 813–14 & n. 11, 104 S.Ct. 1495).

---

**4.** In affirming the Second Circuit, the Supreme Court "'f[ou]nd that it was well within the District Court's discretion to conclude, after reviewing the submissions of the parties and holding oral argument, that an evidentiary hearing on the question of enforcement was unnecessary." 469 U.S. at 324 n. 7, 105 S.Ct. 725.

Here, the IRS has met its prima facie burden of showing that the documents sought may be relevant to a proper purpose of its investigation. As explained in the declaration of Special Agent Jarod J. Koopman (Docket # 6), he is conducting a criminal investigation to determine Muratore's correct federal income tax liabilities for the tax years 1999, 2000 and 2001, and to determine whether Muratore has committed any tax offenses with respect to those tax years. Koopman Decl. ¶ 3. The summonses themselves relate to the Muratores' financial transactions during the period under investigation,[5] as well as transactions involving ESI, of which Muratore is president and sole shareholder.

■ Petitioners' conclusory assertion that the requests are overbroad is without merit. In effect, petitioners seek to turn the *Powell* standard on its head, requiring the IRS to come forward with specific evidence showing precisely how each document sought is expected to yield information of evidentiary value. That is not what the law requires. Although the IRS does have the initial burden of showing relevance, the above-cited cases make clear that this burden is minimal, and that relevance is not to be determined according to the standards that would be applied at trial under the Federal Rules of Evidence. *See Arthur Young,* 465 U.S. at 814, 104 S.Ct. 1495 ("an IRS summons is not to be judged by the relevance standards used in deciding whether to admit evidence in federal court"); *Norwest,* 116 F.3d at 1233 ("'Relevance' under the *Powell* test does not depend . . . on whether the information sought would be relevant in an evidentiary sense, but merely whether that information might shed some light on the tax return") (citing *Arthur Young,* 465 U.S. at

813–14 & n. 11, 104 S.Ct. 1495). Rather, it is petitioners' "significantly greater burden" to show *lack* of relevance, *White,* 853 F.2d at 111, and they have failed to do so. *See also Spell v. United States,* 907 F.2d 36, 38 (4th Cir.1990) (rejecting conclusory assertion of overbreadth).

Petitioners also contend that the summonses issued to them (as opposed to those issued to third-party recordkeepers) infringe upon petitioners' Fifth Amendment privilege against self-incrimination. This assertion, too, lacks merit.

■ First, with respect to the summons issued to Muratore on November 5, 2003, that summons was directed to "Nick B. Muratore, President of Executive Session, Inc.," and sought production only of corporate records of ESI. *See* Docket # 6, Ex. 1. Although generally, an *individual* may have a Fifth Amendment privilege to refuse to produce documents in response to an IRS summons, *see United States v. Doe,* 465 U.S. 605, 612–13, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); *United States v. Fox,* 721 F.2d 32 (2d Cir.1983), corporations have no privilege against self-incrimination. *See Braswell v. United States,* 487 U.S. 99, 102, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988); *Wilson v. United States,* 221 U.S. 361, 382, 31 S.Ct. 538, 55 L.Ed. 771 (1911). Likewise, the custodian of corporate records cannot claim a Fifth Amendment privilege with respect to those records. Such a claim "would be tantamount to a claim of privilege by the corporation-which of course possesses no such privilege." *Braswell v. United States,* 487 U.S. 99, 110, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988).

The other summons issued to Muratore, on November 7, 2003, sought production of

---

5. Petitioners raise a claim concerning the temporal scope of the periods for which records have been sought, which they contend is also overbroad. This argument will be addressed below.

records of the Muratores' tax preparer, Thomas Peters, relating to the Muratores' tax returns and related information during the relevant period. Docket # 6, Ex. 4. Koopman states that he issued this summons when, after serving a similar summons on Peters himself, Peters informed Koopman that he had turned over all such records to Muratore. Koopman Decl. ¶ 16.

■ Petitioners' attempted assertion of a Fifth Amendment privilege with respect to these documents is foreclosed by the Supreme Court's ruling in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976):

> A subpoena served on a taxpayer requiring him to produce an accountant's workpapers in his possession without doubt involves substantial compulsion. But it does not compel oral testimony; nor would it ordinarily compel the taxpayer to restate, repeat, or affirm the truth of the contents of the documents sought. Therefore, the Fifth Amendment would not be violated by the fact alone that the papers on their face might incriminate the taxpayer, for the privilege protects a person only against being incriminated by his own compelled testimonial communications.

*Id.* at 409, 96 S.Ct. 1569.

While it is therefore clear that petitioners' Fifth Amendment defense to the summonses fails, two other points bear mention in this regard. First, even if some of the papers sought could be considered "personal" records of petitioners (which none of them appear to be), the Second Circuit has held that "the Fifth Amendment does not protect the contents of voluntarily prepared documents, business or personal." *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992*, 1 F.3d 87, 93 (2d Cir.1993), *cert. denied*, 510 U.S. 1091, 114 S.Ct. 920, 127 L.Ed.2d 214 (1994).

■ Second, a taxpayer may not claim the privilege against self-incrimination through a generalized, blanket assertion. *United States v. Schmidt*, 816 F.2d 1477, 1482 (10th Cir.1987); *accord United States v. Argomaniz*, 925 F.2d 1349, 1353 n. 8, 1356 (11th Cir.1991). Rather, to properly invoke the privilege, the taxpayer must comply with the summons by appearing and by asserting the privilege on a document-by-document basis. *Schmidt*, 816 F.2d at 1482. Petitioners have not done so here.

■ Petitioners also contend that the summonses amount to a "general demand for paper" that violates the Fourth Amendment's proscription of unreasonable searches and seizures. As to the third-party summonses, however, because the documents sought have already been exposed to a third party, petitioners have no reasonable expectation of privacy, and, consequently, no Fourth Amendment objection to production of the documents. *See S.E.C. v. O'Brien*, 467 U.S. 735, 743, 104 S.Ct. 2720, 81 L.Ed.2d 615 (1984); *United States v. Miller*, 425 U.S. 435, 441–43, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976); *Donaldson v. United States*, 400 U.S. 517, 522, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); *Harris v. United States*, 758 F.2d 456, 457 (9th Cir.1985); *United States v. McAnlis*, 721 F.2d 334, 337 (11th Cir.1983), *cert. denied*, 467 U.S. 1227, 104 S.Ct. 2681, 81 L.Ed.2d 877 (1984); *Reimer v. United States*, 43 F.Supp.2d 232, 237 (N.D.N.Y. 1999).

■ With respect to the November 5, 2003 summons issued to Muratore seeking ESI's business records, the Supreme Court has held that "a corporation has no ... right to privacy." *Browning–Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 284, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989) (citing *Unit-*

*ed States v. Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950)). A demand for ESI's corporate documents, then, does not implicate the Fourth Amendment.

As to the November 7 summons seeking petitioners' tax records, petitioners have failed to show how enforcement would impinge on any privacy interests protected by the Fourth Amendment. A summons that is "reasonable in scope and issued for a proper purpose ... d[oes] not constitute an unlawful search and seizure in violation of the Fourth Amendment." *United States v. Schlom,* 420 F.2d 263, 266 (2d Cir.1969), *cert. denied,* 397 U.S. 1074, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970). Accordingly, "[t]he enforcement of an IRS summons does not violate the [F]ourth [A]mendment as long as the IRS has complied with the *Powell* requirements." *United States v. Reis,* 765 F.2d 1094, 1096 (11th Cir.1985). *See also Fisher,* 425 U.S. at 401 n. 7, 96 S.Ct. 1569 (stating that although taxpayers had not raised any Fourth Amendment arguments, they "could not be successful if they had. The summonses are narrowly drawn and seek only documents of unquestionable relevance to the tax investigation").

Petitioners also allege that the IRS has already seen some of the documents sought by the summonses. Although this allegation is conclusory, it would fail even if supported by specific facts. "The burden of showing an abuse of the court's process is on the taxpayer, and it is not met by a mere showing ... that the *records in question have already been once examined.*" *Powell,* 379 U.S. at 58, 85 S.Ct. 248 (emphasis added).

■ In a related argument, petitioners contend that the summonses violate 26 U.S.C. § 7605(b), which provides in part that "only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary." The IRS states, however, and petitioners have presented no evidence to the contrary, that although an IRS revenue agent did inspect some of ESI's corporate records prior to Koopman's issuance of the summonses, it was based on that prior review that the matter was referred to the IRS's Criminal Investigation Office and Agent Koopman. Thus, the revenue agent's review of the documents and the later issuance of the summonses were both part of one, ongoing investigation.

Under these circumstances, no notice was necessary. As explained by the Fourth Circuit,

[t]he federal courts uniformly have interpreted § 7605(b) to require the issuance of a notice only when the second inspection of a taxpayer's books is part of a second audit. Thus, when the agent's initial audit or examination has been suspended by referral to the Criminal Investigation Division upon an indication of fraud, the joint investigation under the direction of the special agent is a continuation of the revenue agent's audit and no second inspection notice is necessary.

*United States v. Morgan,* 761 F.2d 1009, 1011 (4th Cir.1985) (collecting cases).

Petitioners also note that the IRS, by its own admission, did not give notice to Kathryn Muratore of summonses issued to third-party recordkeepers seeking documents pertaining to her, as required by 26 U.S.C. § 7609(a)(1). The case law establishes, however, that courts should

decline to elevate form over substance and reject the suggestion that every infringement of a requirement of the Internal Revenue Code absolutely pre-

cludes enforcement of an IRS summons. Nothing in the language of the Code itself mandates this sanction for infringement. The correct approach for determining whether to enforce a summons requires the court to evaluate the seriousness of the violation under all the circumstances, including the government's good faith and the degree of harm imposed by the unlawful conduct. *United States v. Bank of Moulton,* 614 F.2d 1063, 1066 (5th Cir.1980); *accord Sylvestre v. United States,* 978 F.2d 25, 27–28 (1st Cir.1992) (district court did not abuse discretion in refusing to quash summonses, since taxpayer had not been harmed by IRS's failure to provide him with timely notice), *cert. denied,* 507 U.S. 994, 113 S.Ct. 1606, 123 L.Ed.2d 168 (1993); *see also Cook v. United States,* 104 F.3d 886, 889 (6th Cir.1997) ("The district courts possess discretionary authority to excuse the Service's technical notice errors where the party in interest suffered no actual prejudice"); *United States v. Texas Heart Inst.,* 755 F.2d 469, 478 (5th Cir.1985) (where the taxpayer has received every benefit of the administrative steps required by the Code and has not shown any prejudice resulting from the failure to follow the strictures of the notice requirement, such failure by the IRS is harmless and enforcement of the summons is not barred), *overruled in part on other grounds, United States v. Barrett,* 837 F.2d 1341 (5th Cir.1988) (en banc) (per curiam), *cert. denied,* 492 U.S. 926, 109 S.Ct. 3264, 106 L.Ed.2d 609 (1989); *Villella v. United States,* No. 99 CIV 3975, 2000 WL 968773, at *6 (S.D.N.Y. July 12, 2000) (holding that the failure to comply with the taxpayer notice requirements of section 7609 does not necessarily warrant the quashing of third-party summonses).

█ Here, there has been no showing by petitioners that the IRS's failure to give notice to Kathryn Muratore in any way prejudiced her. She filed a petition to quash the summonses on November 25, 2003, prior to the earliest date for compliance with any of the summonses. *See* Koopman Decl. ¶ 59 and Exs. 2, 3. This procedural defect, then, is not a sufficient reason to quash the summonses.

Although petitioners assert that the summonses were issued in bad faith, they have presented virtually no evidence to support that assertion, other than the specific arguments addressed above, all of which I have rejected. I therefore deny petitioners' request for an evidentiary hearing in this case to determine whether the summonses were issued in good faith. *See 2121 Arlington Heights Corp.,* 109 F.3d at 1226 (determination of whether hearing is necessary is left to district court's discretion); *accord Mazurek v. United States,* 271 F.3d 226, 231 n. 21 (5th Cir.2001); *United States v. Gertner,* 65 F.3d 963, 969 (1st Cir.1995); *Hintze v. I.R.S.,* 879 F.2d 121, 126 (4th Cir.1989).

One matter remains to be addressed. Petitioners note that although the tax years under investigation are 1999, 2000 and 2001, the summonses state that the periods to which they relate are "1999, 2000, 2001, 2002." *See, e.g.,* Docket # 6, Ex. 1 at 1. In addition, the attachments to the summonses, which set forth the specific documents sought, state that they seek those documents for the years "1999—Present." *See, e.g.,* Docket # 6, Ex. 1 at 3. The summonses themselves were issued in November 2003.

The IRS contends that documents generated after the investigation period may be relevant as evidence of financial transactions that occurred during the investigation period. For example, a check written in December 2001 might not have been cashed or deposited until some time in 2002.

I agree that, given the expansive definition of "relevance" where IRS summonses are concerned, *see Arthur Young,* 465 U.S. at 814, 104 S.Ct. 1495, the IRS should not be limited to seeking documents only from the precise time period under investigation. *See, e.g., Martin v. United States,* No. CIV–88–539, 1988 WL 138758, at *2 (W.D.N.Y. Dec.16, 1988) (finding that "the [third-party recordkeeper] bank's records for the stated years prior to and after the years under investigation are relevant in light of the need to use such indirect means as net worth or cash expenditures method to obtain a trustworthy picture of the petitioner's financial assets at the beginning and at the end of each of the 1983–1986 tax years"). Nevertheless, I also believe that at some point, the temporal distance from the period under investigation becomes so great that even that minimal relevancy threshold cannot be met. Accordingly, I will deny the IRS's motion to enforce the summonses, but only to the extent that the summonses seek documents or other records that were created after December 31, 2002.[6]

## CONCLUSION

Petitioners' petition to quash Internal Revenue Service summonses (Docket # 1) is denied, and the petition is dismissed.

Respondents' motion to dismiss the petition to quash the summonses issued to summarily deny the petition to quash the remaining summonses, and to enforce the summonses (Docket # 6) is granted in part and denied in part: the summonses should be enforced and petitioners' and third-party recordkeepers are directed to comply with the request to produce within twenty (20) days of entry of this order; respondents' motion to enforce is denied to the extent the summonses seek documents created after December 31, 2002.

Respondents' motion to strike the declaration of Nick Muratore dated February 4, 2004 (Docket # 8) is denied as moot.

IT IS SO ORDERED.

---

**6.** The IRS has also moved to strike, in whole or in part, Muratore's February 4, 2004 declaration on the grounds that it was not made under penalty of perjury, and that parts of it were not based on Muratore's personal knowledge and contain inadmissible hearsay. Because my decision in this case would be the same regardless of whether the motion to strike were granted or denied, I will deny the motion to strike as moot.