**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

RICHIE H. CONNER,
　　　　　*Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,
　　　　　*Defendant-Appellee.*

No. 05-1051

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, District Judge.
(CA-03-834-7; CA-03-835-7; CA-04-37-7)

Argued: December 1, 2005

Decided: January 11, 2006

Before LUTTIG and MICHAEL, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

---

Affirmed by published opinion. Senior Judge Hamilton wrote the
opinion, in which Judge Luttig and Judge Michael joined.

---

## COUNSEL

**ARGUED:** G. Nelson Mackey, Jr., BRUMBERG, MACKEY &
WALL, P.L.C., Roanoke, Virginia, for Appellant. Anthony Thomas
Sheehan, UNITED STATES DEPARTMENT OF JUSTICE, Tax
Division, Washington, D.C., for Appellee. **ON BRIEF:** Paul Anthony
Dull, Mark A. Black, BRUMBERG, MACKEY & WALL, P.L.C.,
Roanoke, Virginia, for Appellant. Eileen J. O'Connor, Assistant

Attorney General, Frank P. Cihlar, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; John L. Brownlee, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

## OPINION

HAMILTON, Senior Circuit Judge:

Richie H. Conner (Conner), the subject of an ongoing criminal tax investigation, appeals the district court's order: (1) dismissing his petitions to quash certain summonses issued by the Internal Revenue Service (IRS) to two third-party record keepers; and (2) granting the government's cross motion for enforcement of such summonses. We affirm.

I.

Since the early 1970s, Conner has owned and operated Shags Lumber Company, a sole proprietorship in the business of purchasing and harvesting timber, pressing timber into wood products, and selling those products. In June 1999, IRS Agent Michael Durland began a civil audit of Conner's 1996 and 1997 federal income tax returns. Following completion of those audits, the IRS assigned IRS Agent Thomas Walker (Agent Walker) to audit Conner's 1998 and 1999 federal income tax returns. Subsequently, in February 2002, Agent Walker began to audit Conner's 2000 and 2001 federal income tax returns.

Accountant Rudolph Nagy (Accountant Nagy) had prepared Conner's 1996 through 2000 federal income tax returns and represented Conner before the IRS during its civil audits of those returns. A different accountant, Lloyd Hartman (Accountant Hartman), had prepared Conner's 2001 federal income tax return. As of March 2004, Conner had not yet filed a federal income tax return for 2002.

When Agent Walker received Conner's civil audit file, it contained few documents pertaining to tax years 1996 and 1997, because those

documents had been transmitted to the IRS's Appeals Office. The file did, however, contain Conner's federal income tax returns and profit and loss statements for 1998 and 1999, which documents Agent Walker assumed came from Accountant Nagy, but did not know for certain. Agent Walker then requested additional records from Accountant Nagy, which he did not provide.

Conner retained an attorney to represent him in the civil audit of his federal income tax return for 2000. Agent Walker reviewed records pertaining to Conner's 2000 tax year at the attorney's office, copied those he needed, and authorized the return of the original records to Conner.

Agent Walker ultimately referred Conner's case to the IRS's Criminal Investigation Division for a tax fraud investigation with respect to tax years 1996 through 2002. Special Agent Ross Pierson (Special Agent Pierson) was assigned the case.[1]

Before Special Agent Pierson issued the third-party summonses at issue in the present appeal, Special Agent Pierson reviewed the IRS's civil audit file on Conner and discussed the case with Agent Walker. Notably, the file contained documents indicating that Conner had directed Accountant Nagy to submit a set of federal income tax returns for the years 1994 through 1997 as part of a bank loan application, which returns reflected substantially more income than was reported on the returns Conner had filed with the IRS for the same years. These discrepancies, *inter alia*, prompted Special Agent Pierson to issue summonses to Accountants Hartman and Nagy in order that he (Special Agent Pierson) could compare records pertaining to Conner held by the accountants with those in the IRS's civil audit file on Conner.

---

[1]At all relevant times, there was no United States Department of Justice referral in effect with respect to Conner. Accordingly, 26 U.S.C. (IRC) § 7602(d)(1) has no application in this case. *Id.* ("No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person.").

Special Agent Pierson (accompanied by another IRS special agent and Agent Walker) personally served a summons on Accountant Hartman on December 3, 2003, and a summons on Accountant Nagy on December 8, 2003. The summonses were virtually identical. The first page directed the named accountant to appear at the IRS's office in Staunton, Virginia, before Special Agent Pierson on January 5, 2004, to produce the documents described on the second page relating to Conner's financial transactions for 1996 through 2002. The third and fourth pages quoted extensively from Internal Revenue Code sections containing the rights of third parties who receive summonses for taxpayer records. Rather than producing the summoned documents at the IRS's office in Staunton, Virginia on January 5, 2004, Accountants Hartman and Nagy turned over the summoned documents to Special Agent Pierson on the day of service.

Conner's third petition to quash pertains to a second summons served on Accountant Hartman. Believing that he had been tardy in giving Conner notice of the first summons served on Accountant Hartman, Special Agent Pierson served a second summons on Accountant Hartman in early January 2004. Accountant Hartman did not produce any documents in response to this second summons because he had already complied with the first summons.[2]

Pursuant to IRC § 7609(h), Conner filed petitions in the United States District Court for the Western District of Virginia to quash each of the three third-party summonses. The district court consolidated the petitions and held an evidentiary hearing on December 10, 2004, in order to resolve factual disputes bearing on the questions of whether the IRS issued the summonses in good faith and whether the IRS currently possessed the records sought.[3] Special Agent Pierson, Agent Walker, Accountant Hartman, and Shag Lumber Company's office manager, Eunice Montgomery, testified at the evidentiary hearing. The district court also considered affidavits by Special Agent

---

[2]In his opening appellate brief, Conner states that "[f]or purposes of this appeal, [he] does not raise these notice issues." (Conner's Opening Br. at 3 n.2).

[3]Conner requested prehearing discovery, which the district court denied.

Pierson, Accountant Hartman, and Accountant Nagy. Accountant Nagy died before the evidentiary hearing.

Following the evidentiary hearing, the district court made the following findings of fact in a Memorandum Opinion issued on December 17, 2004:

> 1) Pierson did not demand production of the documents on the day of service;
>
> 2) Each summons conspicuously noted its return date;
>
> 3) Hartman produced the documents on the day of service in order to avoid having to appear at the IRS office on the summons return date;
>
> 4) Pierson did not verbally inform Hartman and Nagy of Conner's right to petition to quash; however, he gave them each a written explanation of Conner's rights, and each had an opportunity to read it before producing the records;
>
> 5) Pierson questioned Hartman and Nagy about their relationship with Conner; however, he did not by that questioning, in effect, prematurely examine the records;
>
> 6) Upon learning of Conner's petitions to quash, Pierson sealed the records in envelopes, and they have remained sealed to this date;
>
> 7) As of this date, neither Pierson nor any other IRS agent has examined the sealed records;
>
> 8) Conner has failed to demonstrate that the IRS already possessed the records at the time Pierson served the summonses.

(J.A. 463).

Based on these findings, the district court denied Conner's petitions to quash and granted the government's motion to enforce the sum-

monses. This timely appeal followed. Pursuant to motion by Conner, the district court stayed the effect of its final order pending appeal.

## II.

When an interested party challenges enforcement of an IRS summons, under *United States v. Powell*, 379 U.S. 48 (1965), the initial burden rests with the government to establish a *prima facie* showing of good faith in issuing the summons, requiring proof that the IRS has satisfied the following four elements: (1) the investigation is being conducted for a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the information sought is not already in the possession of the IRS; and (4) the administrative steps required by the Internal Revenue Code have been followed. *United States v. Stuart*, 489 U.S. 353, 359-60 (1989); *Powell*, 379 U.S. at 57-58; *Alphin v. United States*, 809 F.2d 236, 238 (4th Cir. 1987). The burden on the government to produce a *prima facie* showing of good faith in issuing the summons is "slight or minimal." *Mazurek v. United States*, 271 F.3d 226, 230 (5th Cir. 2001) (internal quotation marks omitted). Indeed, the government need only present "an affidavit of an agent involved in the investigation averring the *Powell* good faith elements" in order to establish a *prima facie* case for enforcement of a civil summons. *Alphin*, 809 F.2d at 238.

> Once the IRS has made such a showing . . . it is entitled to an enforcement order unless the taxpayer can show that the IRS is attempting to abuse the court's process. Such an abuse would take place . . . if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation. The taxpayer carries the burden of proving an abuse of the court's process.

*Stuart*, 489 U.S. 353 at 360 (internal quotation marks and citations omitted).

We review the district court's factual findings underlying its enforcement order for clear error, *Hintze v. Internal Revenue Service*, 879 F.2d 121, 125 (4th Cir. 1989), *overruled on other grounds*,

*Church of Scientology of California v. United States*, 506 U.S. 9, 15-17 (1992), and its legal rulings *de novo*, *see, e.g.*, *Hillman v. Internal Revenue Service*, 263 F.3d 338, 340 (4th Cir. 2001). We review the district court's denial of Conner's request for discovery for abuse of discretion. *Hintze*, 879 F.2d at 126.

### III.

On appeal, Conner does not take issue with the district court's holding that the government carried its minimal burden of establishing a *prima facie* case of good faith under *Powell* for enforcement of the three summonses at issue by submitting Special Agent Pierson's affidavit averring the *Powell* good faith elements. *Powell*, 379 U.S. at 57-58. Neither does Conner take issue on appeal with the district court's factual findings with respect to *Powell*'s first and second prongs (*i.e.*, (1) that the IRS issued the summonses for a legitimate purpose, and (2) that the material sought was relevant to that purpose).

Rather, Conner's appellate challenges are limited to the district court's findings with respect to *Powell*'s third and fourth prongs. We address each in turn.

### A.

With respect to *Powell*'s third prong, the district court found that "Conner has failed to demonstrate that the IRS already possessed the records at the time [Special Agent] Pierson served the summonses." (J.A. 463). Conner disputes this finding. Alternatively, Conner seeks to excuse himself from the burden of proving *Powell*'s third prong on two grounds: (1) that Special Agent Pierson's failure to tender inventory receipts for the records he took left him with no reasonable method for determining whether the IRS already possessed the records at the time he served the summonses; and (2) the district court erred in denying his request for discovery.

None of Conner's arguments warrant reversal of the district court's enforcement order. *Powell*'s third prong focuses upon whether the IRS already possessed the records sought in the challenged summon-

ses. Notably, the Fourth Circuit has held in applying this prong that, when the government has grounds to suspect alteration of a taxpayer's financial records, it has the right to obtain the same records from different sources for comparison purposes. *United States v. Daffin*, 653 F.2d 121, 124 (4th Cir. 1981).

Because the government had already produced Special Agent Pierson's affidavit disavowing possession of the documents sought in the summonses at issue, Conner bore the burden of proving otherwise. In this regard, Conner offered, as the district court described, "[t]he nondescript testimony of [his] office manager . . . ." (J.A. 465). He also offered Accountant Nagy's affidavit stating:

> 8.   That as part of my representation of Mr. Conner in such audits and examinations, I have previously provided the Internal Revenue Service, specifically, Revenue Agents, Michael Durland and Tom Walker, with all of the information concerning his income tax returns, and his books and records in my files.

(J.A. 347). Conner also points out on appeal that Special Agent Pierson and Agent Walker both testified that the IRS had some federal income tax returns for Conner in its civil audit file for the same years that it sought federal income tax returns from Accountant Nagy.

Having reviewed the entire record, we hold the district court's finding in favor of the government with respect to *Powell*'s third prong is not clearly erroneous. First, having reviewed the testimony of Conner's office manager, Eunice Montgomery, we agree with the district court that it was "nondescript" on the topic of which records she may have given the IRS, and further agree that her testimony was insufficient to carry Conner's burden of proof with respect to *Powell*'s third prong. (J.A. 465). As for the district court's crediting of both Special Agent Pierson's testimony at the evidentiary hearing regarding the records in possession of the IRS and his sworn written statements on the subject in his affidavit over the directly opposing statements made by Accountant Nagy in his affidavit, we cannot review such a credibility finding on appeal. *Daffin*, 653 F.2d at 124 (district court's credibility determination regarding witness who gave live testimony during

evidentiary hearing in IRS summons enforcement proceeding "is unassailable on appeal").

Moreover, the record also establishes that the government was entitled to the records sought in the summonses in order to compare them to whatever records the government already possessed, the sources of which were unknown. In his affidavit, Special Agent Pierson stated that he became suspicious that Conner had engaged in some income tax evasion practices when he learned that Conner had filed one set of federal income tax returns for the years 1994 through 1997 with the IRS, but had submitted, through Accountant Nagy, a different set of returns, reporting substantially more income (*i.e.*, higher gross receipts), to a bank in an effort to secure a loan. The record also contains, as an exhibit to Special Agent Pierson's affidavit, a chart comparing the federal income tax return information for 1994 through 1997. Under these suspicious circumstances, the government was entitled to obtain Conner's financial records and income tax returns from Accountants Hartman and Nagy in order to compare them with records already in the IRS's civil audit file on Conner or records they may obtain from other sources. *Daffin*, 653 F.2d at 124. For this reason, Conner was in no way prejudiced in carrying his burden of proving *Powell*'s third prong by Special Agent Pierson's failure to tender inventory receipts for the records he took.[4]

Finally, given the district court's abundant discretion in deciding whether to grant a taxpayer prehearing discovery in a summons enforcement proceeding, Conner has failed to show that the district court abused its discretion in failing to grant him prehearing discovery. The case law is clear that prehearing discovery in summons enforcement proceedings is only granted where the taxpayer has made a preliminary demonstration of abuse of process, which preliminary demonstration Conner failed to make. *Hintze*, 879 F.2d at 127 ("court should not allow discovery at this stage unless the taxpayer makes a preliminary demonstration of abuse"); *Tax Liabilities of John Does v. United States*, 866 F.2d 1015, 1019 (8th Cir. 1989) ("The taxpayer

---

[4]Notably, the district court found Special Agent Pierson's failure to inventory the records taken from Accountants Hartman and Nagy to be consistent with his good faith in that "he did not inventory the documents because he would have had to review them to do so." (J.A. 464 n.2).

must make a substantial preliminary showing of abuse of the court's process before even limited discovery need be ordered [in an IRS summons enforcement proceeding]."); *United States v. Southern Tanks, Inc.*, 619 F.2d 54, 56 (10th Cir. 1980) ("As a general rule, discovery is available in summons enforcement proceedings only in extraordinary situations.").

In sum, we find no reversible error with respect to *Powell*'s third prong.

B.

Conner argues the district court's finding in favor of the government with respect to *Powell*'s fourth prong is clearly erroneous. Conner's argument is without merit.

*Powell*'s fourth prong asks whether the IRS followed the administrative steps required by the IRC with regard to the summonses at issue. In challenge to the district court's finding with respect to *Powell*'s fourth prong, Conner asserts that by accepting the records from Accountants Hartman and Nagy prior to expiration of the twenty-three days in which he, the affected taxpayer, could seek to quash the third-party summonses, Special Agent Pierson did not follow IRC § 7609(d)(1) nor Internal Revenue Manual §§ 25.5.3.4(2)(B) and 25.5.6.2(1)(C).

Again, Conner has failed to establish a case for reversal. IRC § 7609(d)(1) provides that "[n]o *examination* of any records required to be produced under a [third-party] summons as to which notice is required under subsection (a) may be made—(1) before the close of the 23rd day after the day notice with respect to the summons is given [the subject taxpayer]." 26 U.S.C. § 7609(d)(1) (emphasis added). Conner argues that Special Agent Pierson's *physical acceptance* of the records from Accountants Hartman and Nagy violated IRC § 7609(d)(1). Conner's argument is without merit. IRC § 7609(d)(1) plainly prohibits premature *examination* of the records at issue, not physical acceptance. Moreover, Conner does not challenge as clearly erroneous either the district court's finding that Special Agent Pierson sealed the records as soon as he learned of Conner's petitions to quash

or the district court's finding that, as of the date of the district court's final order, no IRS agent had examined the records.

Conner's argument with respect to the Internal Revenue Manual is also without merit. Internal Revenue Manual §§ 25.5.3.4(2)(B) and 25.5.6.2(1)(C) both direct IRS agents not to physically accept records in response to a third-party summons prior to expiration of the twenty-three day period in which the affected taxpayer can seek to quash the summons. The record is undisputed that Special Agent Pierson physically accepted the records from Accountants Hartman and Nagy on the day of service. Thus, Special Agent Pierson violated these two Internal Revenue Manual Sections.

This does not, however, carry the day for Conner on appeal. While violations of the Internal Revenue Manual are relevant to the bad faith inquiry presented in this case, they do not constitute proof by themselves of the IRS's bad faith in issuing the challenged summonses. *Groder v. United States*, 816 F.2d 139, 142 (4th Cir. 1987) (IRS's violation of its own regulations is not proof by itself of bad faith on part of IRS in a tax investigation) ("A Manual violation may be relevant to this showing [of bad faith] but it is not conclusive.").

Furthermore, Special Agent Pierson, who had only worked for the IRS for two and one half years at the time of the evidentiary hearing, explained during his testimony that although he did not know if he had ever received training regarding the Internal Revenue Manual sections at issue, he accepted the records from Accountants Hartman and Nagy on the day he served the summonses because:

> through my training that I received from the IRS, we were taught that you could accept the records. But, you could not examine the records until after the expiration date of the requirements as far as the noticee having to file a petition.

(J.A. 422). This testimony, implicitly credited by the district court, sufficiently neutralized any potential inference of bad faith from Special Agent Pierson's physical acceptance of the records from Accountants Hartman and Nagy prior to the expiration of the twenty-three day waiting period as provided in the Internal Revenue Manual.

In sum, Conner has failed to show the district court's finding with respect to *Powell*'s fourth prong is clearly erroneous.

## IV.

In conclusion, we affirm the district court's order denying Conner's petitions to quash the summonses at issue and granting the government's cross motion for enforcement.

*AFFIRMED*